EDMORE PUBLIC SCHOOL DISTRICT
NO. 2, Appellant,

v.

STATE BOARD OF PUBLIC SCHOOL
EDUCATION, Appellee.

Civ. No. 10218.

Supreme Court of North Dakota.

Nov. 10, 1982.

Caldis & Arneson, Grand Forks, for appellant; argued by Kenneth L. Arneson, Grand Forks.

Nancy K. Hoff, Asst. Atty. Gen., Bismarck, for appellee.

SAND, Justice.

Edmore Public School District No. 2 (Edmore), located within Ramsey, Walsh, and Cavalier Counties, North Dakota, appealed from a district court judgment affirming the decision of the State Board of Public School Education functioning as the State Committee for Reorganization of Public School Districts (State Board) approving the annexation of certain described lands lying within the Edmore district to Adams Public School District No. 128 (Adams), in Walsh County, North Dakota.

Two separate petitions were and are involved, but they were heard at the same time and were consolidated for convenience.

A public annexation hearing, as provided by North Dakota Century Code § 15-53.1-06,[1] concerning the two petitions was held on 12 May 1981. The Walsh and Ramsey County Reorganization Committees participated in that hearing.[2] After the hearing, the Walsh County Reorganization Committee unanimously approved and recommended both petitions for acceptance, and the Ramsey County Reorganization Committee unanimously disapproved both petitions. The Walsh County Superintendent then submitted the annexation to the State Board as required by NDCC § 15-53.1-06 (see footnote 1, supra).

After a hearing before a hearing examiner, the State Board entered separate findings of fact, conclusions of law and orders granting the petitions and approving the annexation of the land to Adams. Edmore appealed the State Board's decision to the

1. North Dakota Century Code § 15-53.1-06 provides as follows:

"Before detaching territory from one school district or annexing territory to another school district, the county committee shall hold a hearing on the annexation thereof. At least fourteen days prior to the time the hearing is to be held, the committee shall cause notice of such hearing to be published in the official newspaper of the county in which the school district is located, or if no newspaper is published in the county, the notice shall be published in a newspaper in an adjoining county in this state. At such hearing the county committee shall receive testimony for the purpose of determining the value and amount of all school property and all bonded and other indebtedness of each school district affected by a change in boundaries, and shall consider the amount of all outstanding indebtedness and make an equitable adjustment of all property, assets, debts, and liabilities among the districts involved. If the annexation is approved by the state committee, the county committee may cause a tax to be levied against each district affected in accordance with the provisions of section 15-47-21 which will equalize the several interests fairly. If the school districts involved in the proposed annexation are situated in more than one county, the county committee of the county encompassing the major portion of each school district shall consider and jointly effect the annexation if a majority of the members of each of such county committees approves the annexation. In the event that the annexation is approved by a majority of

the members of one of the two county committees, the county superintendent of the county in which the annexing district is located shall submit the annexation to the state committee for approval or disapproval, and in such instance approval of the annexation shall have the same effect as approval by all county committees. If the annexation does not receive the approval of any county committee, it shall not be presented to the state committee. In such an instance, an appeal from the decision of the state committee may be had to the district court of the county in which the annexing district is located, in accordance with applicable provisions of chapter 28-32. Whenever a petition for annexation has failed to be approved by any county committee, a petition involving any of the same area shall not be submitted for a period of three months and such petition shall in no event be submitted more than twice in twelve consecutive months. Whenever a petition for annexation has failed to be approved by the state committee, a petition involving any of the same area shall not be submitted for a period of three months and such petition shall in no event be submitted more than twice in twelve consecutive months. If the school districts are situated in more than one county but the major portions of both such school districts are situated in the same county, the county committee of such county shall consider the matter."

2. The Cavalier County Reorganization Committee declined to participate in the hearing.

district court of Walsh County, which entered an order and judgment affirming the State Board's decision. Edmore appealed to this Court.

Our review is governed by and must be in accordance with the provisions of NDCC §§ 28–32–21 and 28–32–19. *McKenzie County School District No. 1 v. State Board of Public School Education,* 311 N.W.2d 167 (N.D.1981); *Kristjanson v. State Committee for Reorganization of School Districts,* 239 N.W.2d 830 (N.D.1976).

Section 28–32–19, NDCC, in essence provides that the decision of the agency shall be affirmed unless (1) the decision or determination is not in accordance with law; (2) the decision is in violation of the constitutional rights of the appellant; (3) the provisions of Ch. 28–32 were not complied with in proceedings before the agency; (4) the rules of procedure of the agency did not afford the appellant a fair hearing; (5) the findings of fact made by the agency are not supported by a preponderance of the evidence; and (6) the conclusions and decisions of the agency are not supported by its findings of fact.

Chapter 15–53.1, NDCC, contains at least three methods for changing boundaries of school districts. These methods are divided into three different Articles within Chapter 15–53.1, NDCC. Article II deals with annexation, Article III deals with reorganization, and Article IV deals with involuntary dissolution. Section 15–53.1–02 [3] specifically provides that the provisions of reorganization shall not apply to annexation unless specifically referenced in Article II and Article IV. That section also sets out the legislative intent that Article II (Annexation of Public Schools) and Article IV (Involuntary Dissolution of Public School Districts) shall remain separate and additional

methods for changing school district boundaries.

In *McKenzie County School District No. 1 v. State Board of Public School Education, supra,* at 169, we said:

"We construe the foregoing provisions [NDCC §§ 15–53.1–05; 15–53.1–29] to require, as a prerequisite to approval by either the county committees or by the State Committee, that the annexation proposal constitutes an acceptable part of a comprehensive program for the reorganization of the school districts involved."

Edmore contended and argued that the decision of the State Board was not in accordance with the law because "there has been no valid comprehensive program for such reorganization, and that such prerequisite ... has not been met," citing NDCC §§ 15–53.1–05, 15–53.1–29 and *McKenzie County School District No. 1, supra.* However, in *McKenzie County School District No. 1,* the State Board made no determination whether or not the annexation constituted an acceptable part of a comprehensive program for reorganization of the school district, nor did it consider any comprehensive reorganization plan. In this case the State Board made the following finding:

"(5)

"The County Committee determined the annexation is an acceptable part of the Walsh County Comprehensive Reorganization Plan."

as to one petition, and as to the other petition it found:

"(4)

"An acceptable part of the Walsh County Comprehensive Reorganization Plan."

---

**3.** North Dakota Century Code § 15–53.1–02 provides as follows:

"Article III, reorganization of school districts, shall not apply to article II, annexation of public school districts, or article IV, involuntary dissolution of public school districts, except where specifically referenced in articles II and IV. It is the intent of the legislative assembly that articles II and IV of this chapter shall remain separate and additional

methods for the changing of school district boundaries. The boundaries of all school districts within the state of North Dakota shall be changed or altered only by annexation, reorganization, or involuntary dissolution as provided for in this chapter. Articles I, II, and IV of this chapter apply to all school districts in the state, including the board of education of the city of Fargo and the district under its jurisdiction for school purposes."

Edmore, in effect, argued that these findings were not supported by the evidence because no comprehensive plan was offered into the record either before the Walsh and Ramsey County Reorganization Committees or the State Board.

The minutes of the hearing before the Walsh and Ramsey County Reorganization Committees reflect that a comprehensive plan for the reorganization of school districts was, to some extent, discussed. At that hearing, counsel for Edmore stated his opinion that the petitions were not part of a comprehensive plan for the reorganization of school districts. The minutes reflect the following entry:

"*Charles Clute* stated annexation must follow a reorganization plan and asked when Fairdale did annex out if this was part of the county reorganization plan submitted to the state. Wallace Feltman read from Walsh County Plan dated 1979. It stated that Fairdale would basically go to Adams, Edmore and Langdon. Feltman also stated the board felt that the area would be split three ways and now it's all in Edmore. Mr. Clute concluded that these petitions could be part of the comprehensive plan. Chairman Bjorneby told about the state requesting such a document."

The record before us contains a copy of a "Walsh County Comprehensive Plan" dated 5 January 1979 which provides, in part, as follows:

"Fairdale Elementary No. 129 would basically go toward Adams District No. 128, Walsh Co.; Edmore District No. 2, Ramsey Co.; and Langdon Dist. No. 23, Cavalier County."

 The record suggests that this 1979 plan was part of prior proceedings before the State Board involving the annexation of Fairdale School District No. 129 [Fairdale]

---

4. The composition of the State Board changed between the petition in 1979 and the instant action, which to some degree may explain the different results of the State Board.

5. North Dakota Century Code § 15–53.1–18 provides as follows:

to Edmore, and an earlier attempt to annex to Adams essentially the same land described in the instant petitions. At that time the State Board denied the petitions to annex the land to Adams, and that decision was affirmed by the district court.[4] With that historical basis in perspective, we believe the 1979 "Walsh County Comprehensive Plan" qualifies as a comprehensive program for the organization of school districts pursuant to NDCC § 15–53.1–29 and could be considered in the petitions for annexation involved in the instant action. We do not believe it is absolutely necessary that a comprehensive plan be formally admitted into the record before a county committee or the State Board. The provisions of NDCC § 15–53.1–19 essentially permit a county committee to submit a plan for reorganization to the State Board prior to the completion of a comprehensive plan; provided, however, that the plan fits into and becomes an integral part of the comprehensive plan. Although the statute deals with reorganization plans and not annexation, we believe the concept that it is not absolutely necessary that a comprehensive plan be formally admitted into the record is applicable to annexation. In this instance the discussions at the county committee hearing reflect that a comprehensive plan existed and was considered. Also the record before us contains the comprehensive plan. Accordingly, we conclude the State Board's findings that the annexation was an acceptable part of a comprehensive plan are supported by a preponderance of the evidence and are in accordance with NDCC § 15–53.1–29.

 Edmore also argued that because the territory involved is located in Walsh County and Ramsey County, NDCC § 15–53.1–18 [5] controls but has not been satisfied.

"If the school districts involved in the proposed plan for reorganization are situated in more than one county, a special committee composed of not less than three members of the county encompassing the major portion of each school district shall prepare a plan for the reorganization of the school districts which shall be submitted to each county

The subject matter in the instant case is annexation pursuant to Article II of NDCC Ch. 15–53.1, not reorganization. NDCC § 15–53.1–02 specifically provides that the provisions of Art. III, Reorganization, shall not apply to Art. II, Annexation, unless specifically referenced in Art. II (see footnote 3). No such reference exists to incorporate NDCC § 15–53.1–18 into Art. II, nor do we believe our decision in *McKenzie County School District No. 1, supra,* mandates such a result. Further, we note that NDCC § 15–53.1–06 sets forth provisions to deal with annexations involving school districts situated in more than one county.

Edmore contended that the statutes contemplated that annexation procedures require that children of school age reside in the territory to be annexed from one school district to another, citing NDCC §§ 15–53.-1–16; 15–53.1–18. However, these statutes refer to reorganization and are not referenced in Art. II referring to annexation.

■ Edmore next contended that the provisions of NDCC § 15–53.1–05.1 were not complied with. From the facts made available, the annexation petition was initiated under NDCC § 15–53.1–05 pertaining to annexation or attachment of contiguous territory and did not involve the exchange of territory under NDCC § 15–53.-1–05.1. Therefore, this contention is without merit.

■ Edmore contended that the annexation did not result in logical boundaries as required by NDCC § 15–53.1–20(5). In reviewing the map provided by the State Board, we can readily observe that the boundaries resulting from the annexation are no more illogical than the boundaries between the counties. No evidence was introduced or presented to establish in what manner or by what standard the boundaries are illogical. We do not substitute our judgment for that of the Board. *Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214 (N.D. 1979). Neither are we persuaded that the contention of Edmore in this respect has merit.

■ Edmore contended that the findings of fact made by the State Board are not supported by a preponderance of the evidence. Edmore's argument in this respect was directed primarily to the contention that the County Committees or State Board did not have before them a comprehensive program or plan for the reorganization of school districts. The record, however, contains references to a plan and the State Board made specific findings that the proposed annexation fits or comes within the overall plan. The record does not disclose that the question was raised before either the County Committees or the State Board so that the plan could be more closely identified or, for that matter, precisely determined that no plan existed. This case is distinguishable from the *McKenzie* case wherein no reference or finding was made regarding the comprehensive plan, whereas in the instant case the State Board specifically found, or referred to the committee finding, that the annexation proposal came within the plan. Consequently, we are left unpersuaded by this argument.

Edmore also contended that the State Board's finding that an equitable adjustment of the property and assets had been made was not supported by the evidence, and further, that the adjustment was inequitable because Edmore lost property hav-

committee for its approval. In the event that the reorganization plan is approved by a majority of the members of one of the two county committees, or the members of one or more of the special committees fail or refuse to meet with the committee or committees from other counties, the county superintendent of the county in which the largest number of pupils who would be affected by the proposed new district reside shall submit the reorganization plan to the state committee for approval or disapproval. Approval of the reorganization plan by the state committee shall have the same effect as approval by all the county committees. If the reorganization plan fails to receive the approval of any county committee, it shall not be presented to the state committee for review. If the school districts are situated in more than one county but the major portions of both such school districts are situated in the same county, the county committee of such county shall consider the matter."

ing a tax base in the amount of approximately $70,000 and tax revenue in the amount of approximately $4,500, without benefiting from any gain or being relieved of any responsibility.

 We do not believe an "equitable adjustment" as contemplated by NDCC § 15–53.1–06 necessarily requires that for every loss of some benefit sustained by one school district there must be a corresponding immediate gain of another benefit or loss of a responsibility by that school district. An equitable adjustment does not necessitate an immediate gain or a loss of a tangible benefit or responsibility. Consideration must also be given to intangible items as well as the future effect of an action. In this respect an equitable adjustment must be considered with a view toward the effect on the entire education system. For example, it may be appropriate to detach an area from a large, sparsely populated school district in order to provide a larger tax base for a small, densely populated school district and thereby provide more available money for the smaller school district. This procedure may take some of the tax basis from a larger district to benefit another district without providing an apparent benefit to the larger district. We believe such a situation could constitute an equitable adjustment to satisfy the statutory requirements.

We believe Edmore's argument on this issue overlooks these considerations. With these considerations in mind, and considering the record before us, we believe the State Board's findings are supported by the evidence.

We conclude that the decision of the State Board is in accordance with the law, the findings of fact of the State Board are supported by a preponderance of the evidence, and the decision is supported by the findings of fact.

The judgment of the district court affirming the decision of the State Board is affirmed.

ERICKSTÁD, C.J., and VANDE WALLE, PEDERSON and PAULSON, JJ., concur.