In the Matter of the Appeal from an order of the State Board of Public School Education of the State of North Dakota Approving the Dissolution of Garner School District No. 10, Golden Valley County, North Dakota, GARNER PUBLIC SCHOOL DISTRICT NO. 10 and Beach Public School District No. 3, Appellants in District Court and Appellees in Supreme Court,

v.

GOLDEN VALLEY COUNTY COMMITTEE FOR REORGANIZATION OF SCHOOL DISTRICTS and the State Board of Public School Education acting as the State Committee for Reorganization of School Districts, Appellees in District Court and Appellees in Supreme Court,

Lone Tree Public School District, Appellee in District Court and Appellant in Supreme Court.

Civ. No. 10349.

Supreme Court of North Dakota.

May 26, 1983.

Freed, Dynes, Reichert & Buresh, Dickinson, for appellant Lone Tree Public School District; argued by George T. Dynes.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for appellee Garner Public School District No. 10; argued by Ward M. Kirby.

McConn, Fisher & Thune, Grand Forks, for appellee Beach Public School Dist. No. 3; argued by Gary R. Thune.

Orrin B. Lovell, Beach, for appellee Golden Valley County Committee for Reorganization of School Districts.

Nancy K. Hoff, Asst. Atty. Gen., Bismarck, for appellee State Bd. of Public School Educ.

PAULSON, Justice.

This is an appeal by Lone Tree Public School District No. 6 from an order of the district court which reversed an order of the State Board of Public School Education acting as the State Committee for Reorga-

nization of School Districts. The State Committee approved a dissolution plan for the Garner School District made by the Golden Valley County Committee for Reorganization of School Districts. The district court ordered that the State Committee's findings of fact, conclusions of law, and order were reversed, and it remanded to the County Committee to start the dissolution proceedings from the beginning. We reverse the order of the district court and remand to the district court with direction to remand to the State Committee for further proceedings consistent with this opinion.

The parties involved in this appeal are the district which is to be dissolved, the Garner Public School District No. 10 [Garner]; the appellant, the Lone Tree Public School District No. 6, which includes the town of Golva [Golva]; the Beach Public School District No. 3 [Beach]; the Golden Valley County Committee for Reorganization of School Districts [County Committee]; and the State Board of Public School Education acting as the State Committee for Reorganization of School Districts [State Committee].

Garner has not operated a school since 1978. Pursuant to § 15–53.1–41 of the North Dakota Century Code, Garner notified the County Committee so that it could begin proceedings to dissolve the school district. In 1981 the County Committee held a hearing and submitted a dissolution plan to the State Committee for approval, as required by § 15–53.1–41, N.D.C.C. The plan was not approved so the County Committee held a second hearing and submitted a second dissolution plan to the State Committee. The second plan also was not approved.

In 1982 the County Committee held hearings on April 19 and on April 27 regarding a third dissolution plan. This plan provided that nine sections of land were to be attached to Beach and twenty-seven sections of land were to be attached to Golva. Each family in the Garner School District which had school age children was allowed the choice of attaching the portion of land containing its farmstead to the school district containing the school the parents wanted their children to attend. As a result, three children would attend school in Golva and six children would attend school in Beach.

Although the children were allowed to attend their families' choice of schools under the third plan, a controversy still existed regarding the uninhabited land whose owners would provide taxes for either Beach or Golva. Because Golva is a smaller school than Beach, it needs more money per pupil to operate and it has a higher mill levy than that of Beach. An area of local concern involved the situation wherein a family's farmstead was attached to Beach so that its children could attend school in Beach, but the remainder of their land was attached to Golva to support the smaller school.

The State Committee held an informal open hearing on the third plan in May 1982. Because the County Committee had not considered the issue of adjustment of any properties, debts, or liabilities belonging to Garner, as required by § 15–53.1–42, N.D. C.C., the State Committee remanded to the County Committee for a hearing on that issue.

The County Committee held a public hearing on June 2, 1982, and voted to divide Garner's properties, debts, and liabilities by giving twenty-five percent to Beach and seventy-five percent to Golva. It appears from the minutes taken at this meeting that public testimony was not allowed until after the County Committee voted. The State Committee then reconvened on June 21, 1982, and approved the dissolution of Garner as proposed by the third plan. However, the State Committee did not allow the introduction of evidence or the cross-examination of witnesses at the June 21 hearing, and Beach submitted written procedural objections.

The State Committee approved the dissolution on June 21, 1982, and issued the following findings of fact, conclusions of law, and order on July 26, 1982:

## "FINDINGS OF FACT

### I.

"That on or about March 15, 1982 the county superintendent of schools notified the Committee for the Reorganization of School Districts, that according to statute the Garner Public School District must be dissolved and attached to other school districts or district.

### II.

"That on April 19, 1982 at 1:00 o'clock p.m., pursuant to due notice, a meeting was held in the Golden Valley Courthouse, Beach, North Dakota, by the Golden Valley County Committee for School District Reorganization considering the dissolution of the Garner Public School District.

### III.

"Sections 1, 2, 3, 13, 14, 15, 16, 20, 22; attached to Beach and the balance of the township attached to Lone Tree. It was approved by the Golden Valley County Reorganization Committee by a vote of two in favor and one opposed.

### IV.

"That subsequent to such dissolution hearing the plan was submitted to the State Board of Public School Education by Bud Dahl, Golden Valley County Superintendent of Schools, as provided in Section 15–53.1–06 of the North Dakota Century Code.

### V.

"That pursuant to notice, a hearing was held before the State Board of Public School Education on May 17, 1982 regarding the dissolution of Garner Public School District.

### VI.

"That subsequent to said hearing before the State Board of Public School Education the following findings were made regarding the merits of the dissolution of Garner Public School District and its attachment to Lone Tree Public School District and Beach Public School District in Golden Valley County, North Dakota:

(1) The county committee determined the attachment is an acceptable part of the Golden Valley County Comprehensive Reorganization Program.

(2) The value and amount of school property and indebtedness has been determined by the county committee.

(3) An equitable adjustment of property, assets [sic], debts and liabilities has been made by the county committee.

(4) The attachment will provide the best educational opportunities for pupils of the public schools and the wisest use of public funds for the support of the public school system, school districts and attached territory.

(5) The district to be dissolved will be attached to a contiguous district operating an accredited high school.

## CONCLUSIONS OF LAW

### I.

"That the State Board of Public School Education has jurisdiction of the parties hereto and the subject matter hereof, pursuant to Chapters 15–53.1 and 28–32 of the North Dakota Century Code.

### II.

"The dissolution plan was filed pursuant to and in accordance with law.

### III.

"Proper procedures and all relevant considerations were followed pursuant to Chapter 15–53.1 have been considered.

### IV.

"That the plan should be granted or denied.

## ORDER

"UPON the foregoing Findings of Fact and Conclusions of Law, it is the decision of the State Board of Public School Education that the dissolution of Garner Public School District No. 10 be dissolved and attached to Lone Tree Public School District No. 6 and Beach Public School District No. 3, Golden Valley County, State of North Dakota."

Both Garner and Beach appealed the State Committee's order to the district court. It appears that Beach also attempted to appeal the County Committee order to the district court under § 15–53.1–32, N.D.C.C. The district judge prepared a memorandum opinion and order reversing the State Committee order and remanding to the County Committee for new proceedings. Golva then appealed to this court.

Chapter 15–53.1, N.D.C.C., is entitled "Annexation, Reorganization, and Involuntary Dissolution of Public School Districts" and is divided into the following four sections: Article I—General Provisions [§§ 15–53.1–01, 15–53.1–02]; Article II—Annexation of Public School Districts [§§ 15–53.1–05 through 15–53.1–07]; Article III—Reorganization of Public School Districts [§§ 15–53.1–08 through 15–53.1–40]; and Article IV—Involuntary Dissolution of Public School Districts [§§ 15–53.1–41, 15–53.1–42]. Section 15–53.1–02, N.D.C.C.,[1] declares a legislative intent to treat the processes of annexation, reorganization, and dissolution as separate procedures; however in reality they have not been treated separately. *See* Background Memorandum on "Statutes Governing Annexation, Reorganization, and Dissolution of Public School Districts in North Dakota" prepared in November 1982 by the North Dakota Legislative Council staff.

In *Kristjanson v. State Committee, Etc.*, 239 N.W.2d 830, 832 (N.D.1976), this court recognized the problems involved in the interpretation of several sections in Chapter 15–53.1, N.D.C.C., when we stated:

"Our examination of the statutes indicates that ... [they], in a rather confused manner, specify the rules and issues applicable when someone proposes to change the boundaries of school districts."

The Legislative Council Background Memorandum cited, *supra* at page 22, concluded that:

"The structural problems of Chapter 15–53.1 recited in the preceding discussion are serious. The chapter appears to have been a patchwork creation in which provisions of old law were included in the new chapter without full consideration of how they would operate if they were applied to a statutory scheme in which the processes of school district reorganization, annexation, and dissolution were treated as separate and distinct means of changing school district boundaries."

The 1983 North Dakota Legislature attempted to remedy some of the problems in Chapter 15–53.1, N.D.C.C., by passing House Bill No. 1458 which amended numerous sections in this chapter.[2] However, the

---

1. Section 15–53.1–02, N.D.C.C., provides, in part, as follows:

   "*Reorganization not to include annexation or dissolution—Boundary changes.* Article III, reorganization of school districts, shall not apply to article II, annexation of public school districts, or article IV, involuntary dissolution of public school districts, except where specifically referenced in articles II and IV. It is the intent of the legislative assembly that articles II and IV of this chapter shall remain separate and additional methods for the changing of school district boundaries. The boundaries of all school districts within the state of North Dakota shall be changed or altered only by annexation, reorganization, or involuntary dissolution as provided for in this chapter."

2. One of the major changes in House Bill No. 1458 [effective April 6, 1983] to Chapter 15–53.1, N.D.C.C., involves § 15–53.1–06, N.D.C.C., and county committee annexation hearings. This 1983 amendment provides that the county committee may receive evidence regarding fourteen listed factors, plus "any other relevant factors". Additionally, county committees are now required to "make specific findings with reference to every one of those factors to which testimony or documentary evidence was directed". The statutes in effect at the time of the commencement of this action did not require the county committee to make

1983 Legislature obviously believed that Chapter 15–53.1, N.D.C.C., was in need of further revision. It adopted House Concurrent Resolution No. 3077 of the 1983 Legislature which states that "the entire process of school district annexation, reorganization, and dissolution under Chapter 15–53.1 of the North Dakota Century Code is confusing" and resolves that the Legislative Council study this issue and report to the 1985 Legislature with its recommendations.

The confusion within Chapter 15–53.1, N.D.C.C., is involved in the first issue raised by the parties in the instant case—whether or not the County Committee order is subject to direct judicial review. Section 15–53.1–42, N.D.C.C., states that a "county committee shall receive testimony for the purpose of adjusting properties, debts, and liabilities of the district to be dissolved".

■ A county committee is not an "administrative agency" pursuant to § 28–32–01, N.D.C.C.; therefore, its order is not reviewable under the North Dakota Administrative Agencies Practice Act. *See* § 28–32–15, N.D.C.C. However, Beach argues that the County Committee dissolution order is subject to judicial review under § 15–53.1–32, N.D.C.C., of the reorganization article of Chapter 15–53.1, N.D.C.C. Section 15–53.1–32, N.D.C.C., provides the following:

"*Appeal from decision of county committee in making adjustments of property, debts, and liabilities.* An appeal may be taken to the district court on any question of adjustment of property, debts, and liabilities among the districts involved in which the power to make an adjustment or adjustments has been extended by this chapter. Any person feeling aggrieved by the decision of the county committee after the hearing provided for in section 15–53.1–16 may appeal from such decision. Such appeal shall be taken within thirty days after the deci-

sion of the committee on the adjustment of the property, debts, and liabilities, by serving a written notice of appeal upon a member of the county committee. If the court finds the terms of the adjustment in question to be not legally or equitably constituted, it shall make an adjustment that is equitable and legal. Any determination by the court with respect to the adjustment of property, debts, and liabilities among the districts or areas involved shall not otherwise affect the validity of the reorganization or creation of any district or districts under the provisions of this article."

Beach relies upon the reference in § 15–53.1–32, N.D.C.C., to "this chapter" and argues that a county committee's adjustment of property, debts, and liabilities of the district to be dissolved may be appealed directly to the district court.

■ We do not agree. In construing a statutory provision, every word, clause, and sentence used in the statute is to be given meaning and effect. *Rothe v. S–N–Go Stores, Inc.,* 308 N.W.2d 872, 875 (N.D.1981). Section 15–53.1–32, N.D.C.C., begins by providing that "An appeal may be taken to the district court on any question of adjustment of property, debts, and liabilities *among the districts involved* in which the power to make an adjustment or adjustments has been extended by this chapter." [emphasis added]. The next sentence in § 15–53.1–32, N.D.C.C., provides that an aggrieved person may appeal the decision of the county committee to the district court "after the hearing provided in section 15–53.1–16". Section 15–53.1–16, N.D.C.C., involves "a public hearing on the advisability of any proposal by . . . [the county] committee for the reorganization of school districts which involves the formation of a new district or the transfer from one established district to another of any territory in which children of school age reside". The final sentence in § 15–53.1–32, N.D.C.C., again refers to an adjust-

specific findings and only required that the county committee consider the properties, debts, and liabilities of the school district to be dissolved. In addition to House Bill No. 1458, the 1983 North Dakota Legislature passed two

Senate Bills [S.B. No. 2048 and S.B. No. 2071] which amend Chapter 15–53.1, N.D.C.C.; however, these amendments are not relevant to the issues in the case at hand.

ment "among the districts or areas involved". After considering § 15–53.1–32 in its entirety, we do not believe this section was intended to create an appeal from a county committee to the district court when that committee was considering the *dissolution* of a *single* school district. Section 15–53.1–02, N.D.C.C., supports this result as it provides that the provisions of Article III, including § 15–53.1–32, do not apply to Article IV, involuntary dissolution of public school districts, unless there is a specific reference to the section in Article IV. *See Edmore Public Sch. Dist. No. 2 v. State Bd.,* 326 N.W.2d 81, 85 (N.D.1982).

■ The second issue in this case involves judicial review of the State Committee's determinations. In an appeal from a decision of an administrative agency, such as the State Committee, which has been appealed first to the district court and then to this court, we review the decision of the agency and look to the record compiled by the agency. *Application of Nebraska Public Power Dist.,* 330 N.W.2d 143, 146 (N.D. 1983). Section 28–32–19, N.D.C.C., controls the scope of our review of an administrative agency determination.[3] The factual basis of an administrative order is reviewed in a limited manner by considering the following questions: "(1) Are the findings of fact supported by a preponderance of the evidence? (2) Are the conclusions of law sustained by the findings of fact? (3) Is the agency decision supported by the conclusions of law?" *Asbridge v. North Dakota State Highway Com'r,* 291 N.W.2d 739, 743 (N.D.1980). In addition to reviewing the factual basis for an agency's decision, this court considers whether the decision violates constitutional rights or is not in accord with the law. *See* § 28–32–19, N.D.C.C. This court exercises restraint when reviewing agency findings; we do not substitute our judgment for that of the agency. *Asbridge, supra* 291 N.W.2d at 744.

■ The appellees' briefs chiefly contest three findings of fact made by the State Committee. The State Committee found that the "attachment will provide the best educational opportunities for pupils of the public schools and the wisest use of public funds for the support of the public school system, school districts and attached territory" [Finding VI(4) ]. We have reviewed the record before the State Committee and find that this statement is supported by a preponderance of the evidence. The State Committee had the following evidence before it: (1) the minutes of the County Committee's April 19 meeting; (2) the minutes of the County Committee's April 27 meeting; (3) the minutes of the County Committee's June 2 meeting regarding the adjustments of assets and liabilities; (4) statistics regarding the land area, taxable valuation, number of children, and number of teachers at the Garner, Lone Tree, and Beach Public

**3.** Section 28–32–19, N.D.C.C., provides:

"*Scope of and procedure on appeal from determination of administrative agency.* The court shall try and hear an appeal from the determination of an administrative agency without a jury and the evidence considered by the court shall be confined to the record filed with the court. If additional testimony is taken by the administrative agency or if additional findings of fact, conclusions of law, or a new decision shall be filed pursuant to section 28–32–18, such evidence, findings, conclusions, and decision shall constitute a part of the record filed with the court. After such hearing, the court shall affirm the decision of the agency unless it shall find that any of the following are present:
"1. The decision or determination is not in accordance with the law.

"2. The decision is in violation of the constitutional rights of the appellant.
"3. Provisions of this chapter have not been complied with in the proceedings before the agency.
"4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
"5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
"6. The conclusions and decision of the agency are not supported by its findings of fact.
If the decision of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the decision of the court."

School Districts; (5) a map showing the proposed changes; (6) maps showing the county comprehensive plan; (7) a form showing the change in enumeration of children; and (8) a letter from the Beach School Board. Additionally, the State Committee held an open hearing on May 17, 1982, which, when transcribed, totaled 68 pages of testimony.

During the May 17 hearing, the attorney for Garner stated:

"We find ... no resolution to the effect that the county committee found that this plan which is evidence [sic] by the map submitted which attaches nine sections of the district to Beach and the balance to Golva will provide for the best educational opportunities for the pupils of the district and the wisest use of public funds as the statute requires."

However, § 15–53.1–42, N.D.C.C., only requires that the County Committee

"... shall, by resolution order the district dissolved ... in such a manner as will, in its judgment, provide the best educational opportunities for pupils of the public schools and the wisest use of public funds for the support of the public school system in such school districts and attached territory."

The County Committee did resolve to dissolve Garner, as required. At the May 27 hearing before the State Committee the attorney for Golva explained why he believed the County Committee fulfilled the requirements of § 15–53.1–42, N.D.C.C.:

"Now the statute talked about two purposes in these hearings. I refer to 15–53.1–42 and the first one and this has been recognized as the best educational opportunities. We would acquaint [sic] that to going where they want to go. We don't agree to this necessarily better opportunities but it's where they want to go and be recognized and the counties have recognized that. The second one is, the best use of funds for the operation of schools in the district. There are two schools ... in the district, Golva and

Beach and the county board recognizes that Golva needs some tax base to operate. They are levying more and they should be able to ah—they need this more than Beach does. It's that simple. Ah, the county board is—has rustled [sic] with this for a long time. They are a duly constituted public body as we all recognize and they made a decision and we would submit that it should be accepted."

The appellees also contend that Finding VI(2) is not supported by the evidence. State Committee Finding VI(2) states that "The value and amount of school property and indebtedness has been determined by the county committee." We can find no evidence in the record to support this finding. However, the statutes involved do not specifically require that the County Committee determine the value and amount of school property and debts.

Section 15–53.1–42, N.D.C.C., provides that "the county committee shall receive testimony for the purpose of adjusting properties, debts, and liabilities of the district to be dissolved in accordance with the provisions of section 15–53.1–06". Section 15–53.1–06, N.D.C.C., provides that "the county committee *shall receive testimony* for the purpose of determining the value and amount of all school property ... and other indebtedness ... and *shall consider* the amount of all outstanding indebtedness and *make an equitable adjustment* of all property, assets, debts, and liabilities ... [emphasis added]".

■ The County Committee is required to receive testimony, consider, and then make an equitable adjustment. Although it would be logical for the County Committee to determine school property values while considering the issue, the statutes do not require the County Committee to make findings listing the property values. Although we believe that State Committee Finding VI(2) is not supported by a preponderance of the evidence, we will not remand

to the State Committee for a modification of Finding VI(2) because this inappropriate finding does not affect our decision.

█ The appellees' third argument is that Finding VI(3) made by the State Committee is not supported by a preponderance of the evidence. This finding states that an equitable adjustment of property, assets, debts, and liabilities has been made by the County Committee.

During the May 17 hearing the State Committee members questioned the County Committee members regarding whether or not they addressed the issue of adjusting Garner's properties, debts, and liabilities as required by § 15–53.1–42, N.D.C.C. The State Committee determined that the County Committee did not address this issue and told the County Committee to call a public meeting for that special purpose only. The County Committee held a special public meeting on June 2, 1982. The minutes of such meeting show that after the commencement of the meeting, one committee member moved that the assets be divided to give Beach 25 percent and Golva 75 percent thereof. The motion passed with two members in favor and one member opposed. Public testimony was then allowed; however, the testimony involved the dissolution plan generally and not the question of the division of assets and liabilities. Although the public testimony should have been allowed before the vote, the committee had the option to change its mind before adjournment. It did not do so and ordered the division of the assets and liabilities as

moved.[4] The record shows that the County Committee did make an equitable adjustment of Garner's assets and liabilities, considering the evidence before it.

█ Another issue raised by the appellees involves the final State Committee hearing on June 21, 1982. The only matter to be discussed at the hearing was the County Committee's distribution of Garner's assets and liabilities. During the hearing two State Committee members stated that the hearing was "closed". Attorneys for Beach and Garner were not allowed to introduce testimony attempting to persuade the State Committee that the County Committee improperly adjusted Garner's assets and liabilities. Regardless of the nature of the evidence Beach and Garner had to present to the State Committee, the State Committee erred by not considering it. Pursuant to § 28–32–01(1)(s), N.D.C.C., the State Board of Public School Education is an "administrative agency", except when it is administering the state school construction fund. At a hearing before an administrative agency, parties whose substantial rights may be affected must be allowed to introduce testimony and other evidence. This evidence becomes a part of the official record of the hearing and is considered by the administrative agency when it makes its determinations. See § 28–32–06, N.D.C.C. Based upon the provisions of the North Dakota Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C., we are required to remand to the State Committee for a hearing regarding

---

4. The County Committee made the following adjustment of Garner's properties, assets, and liabilities after the June 2 meeting, as shown by its order of June 11, 1982 [preamble and signatures omitted]:

"All funds in the county treasure's [*sic*] office shall be turned over to the Garner Public School District upon the approval of the dissolution by the State Board of Public School Education to the general fund of the Garner School District.

"Any taxes spread and uncollected shall be credited to the respective school districts of Beach and Lone Tree.

"All assets and liabilities will be apportioned to the Lone Tree and Beach Public School Districts as set by the Golden Valley County Committee at the hearing of June 2, 1982, as follows: seventy-five (.75) percent to Lone Tree District and twenty-five (.25) percent to Beach School Dist.

"Building and real property will become the property of the school district that they are located in.

"All patrons of the Garner Public School Dist. # 10 will be accorded the rights and privileges of the district they become part [of] and will assume the tax levies and obligations of that district."

the adjustment of Garner's assets and liabilities that is in accordance with the Act.

We have reviewed the remaining arguments raised by the parties and find no merit in their contentions. We reverse the decision of the district court which remanded to the County Committee and, instead, direct the district court to remand to the State Committee for one purpose only—to hold a public hearing regarding the adjustment of Garner's properties, debts, and liabilities, at which hearing interested parties may introduce evidence for the State Committee's consideration.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.