356 N.W.2d 99 (1984)
In the Matter of the Application of Milton ZIMBELMAN, d/b/a Bud's Mobile Home Towing, Bismarck, North Dakota, for an Extension of Special Certificate of Public Convenience and Necessity No. 957.
BARRETT MOBILE HOME TRANSPORT, INC., Fargo, North Dakota, Plaintiff and Appellee,
v.
Milton ZIMBELMAN, d/b/a Bud's Mobile Home Towing, Bismarck, North Dakota, Defendant and Appellant.
Civ. No. 10708.
Supreme Court of North Dakota.
October 23, 1984.
*100 Rosenberg & Baird, Bismarck, for plaintiff and appellee; argued by Jerry W. Evenson, Bismarck.
Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for defendant and appellant Milton Zimbelman; argued by R.W. Wheeler, Bismarck.
Daniel S. Kuntz, Asst. Atty. Gen., N.D. Public Service Commission, Bismarck, for Public Service Commission.
GIERKE, Justice.
Milton Zimbelman, doing business as Bud's Mobile Home Towing (Zimbelman), appeals from a district court judgment which reversed in part and modified in part an order of the North Dakota Public Service Commission (PSC). We reverse the judgment of the district court and affirm the order of the PSC.
Zimbelman holds a Special Certificate of Public Convenience and Necessity authorizing him to transport mobile homes to, from, and within an area generally encompassing the western half of North Dakota. In February 1983, Zimbelman filed an application with the PSC seeking an extension of his common carrier authority to include transportation of mobile homes between all points in the State of North Dakota.
Barrett Mobile Home Transport, Inc., provides mobile home transportation services nationwide. It holds a certificate to transport mobile homes between all points in North Dakota. Barrett has protested the Zimbelman application, alleging that there is insufficient need in eastern North Dakota for another common carrier and that its business would be adversely affected if the Zimbelman application were granted.
On April 15, 1983, a hearing was held on the application. The PSC issued its findings of fact, conclusions of law, and order granting the application on June 7, 1983. Barrett appealed the PSC order to the district court, which ordered the PSC to modify its order to limit the extension of Zimbelman's authority only to Stutsman County, and only so long as Zimbelman maintained a vehicle within that county. Zimbelman has appealed from the judgment of the district court.
In an appeal from a decision of an administrative agency which has been first appealed to the district court and then to this Court, we review the decision of the administrative agency rather than the decision of the district court. Garner Public School District No. 10 v. Golden Valley County Committee for Reorganization of School Districts, 334 N.W.2d 665, 671 (N.D.1983); Application of Nebraska Public Power District, 330 N.W.2d 143, 146 (N.D.1983). Accordingly, in our review we look to the record compiled before the administrative agency, rather than the findings of the district court. Application of Nebraska Public Power District, supra, 330 N.W.2d at 146; Asbridge v. North Dakota State Highway Commissioner, 291 N.W.2d 739, 743 (N.D.1980).
The appropriate scope of review of an administrative agency determination is set out in Section 28-32-19, N.D.C.C. We have held that, pursuant to the statute, our scope of review is limited to a three-step process: (1) Are the findings of fact supported by a preponderance of the evidence? (2) Are the conclusions of law sustained by the findings of fact? (3) Is the agency decision supported by the conclusions of law? Garner Public School District No. 10 v. Golden Valley County Committee for Reorganization of School Districts, supra, 334 N.W.2d at 671; Asbridge v. North Dakota State Highway Commissioner, supra, 291 N.W.2d at 743.
Barrett has challenged various findings of fact made by the PSC. In Power Fuels, Inc. v. Elkin, 283 N.W.2d 214, 220 (N.D. 1979), we set forth the following general *101 principle for review of an administrative agency's findings of fact:
"In construing the `preponderance of the evidence' standard ... we do not make independent findings of fact or substitute our judgment for that of the agency. We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record."
It is not the function of the judiciary to act as a "super board," and we will not substitute our judgment for that of the qualified experts in the administrative agencies. Application of Nebraska Public Power District, supra, 330 N.W.2d at 146.
The factors to be considered by the PSC in granting a certificate to a motor carrier are set out in Section 49-18-14, N.D.C.C.:

"49-18-14. Factors to be considered by commission in granting certificate. Before granting a certificate to a common motor carrier, the commission shall take into consideration:
1. The need for service proposed by the applicant;
2. The increased cost of maintaining the highway concerned;
3. The effect on other existing transportation facilities;
4. The fitness and ability of applicant to provide service;
5. Adequacy of proposed service; and
6. Such other information as the commission may deem appropriate.
"If the commission finds that the transportation to be authorized by the certificate is not consistent with the public convenience and necessity the commission shall not grant such certificate."
The PSC made specific findings of fact regarding the above-enumerated factors. Barrett challenges the PSC's findings relating to the need for service in eastern North Dakota, the effect on Barrett's operations in eastern North Dakota, and the fitness and ability of Zimbelman to provide the proposed service. We have thoroughly reviewed the record compiled before the PSC and we conclude that a reasoning mind reasonably could determine that the factual conclusions reached were proved by the weight of the evidence from the entire record. Giving deference to the expertise of the PSC in this area, we will not substitute our judgment for that of the agency or reevaluate the evidence. We conclude that the findings of fact are supported by a preponderance of the evidence.
Barrett also challenges the PSC's finding that granting of the application would not unduly increase the cost of maintaining highways in the State, contending that there was no evidence in the record to support this finding. Certainly it is not required in a case such as this to conduct engineering studies to determine the impact on highway maintenance costs. The PSC could logically infer from the testimony presented regarding the nature of the proposed service that there would be no undue increase in highway maintenance costs. The testimony indicates that Zimbelman intended to provide service in relatively the same manner with the same general type of equipment as Barrett.
Mobile home residents are not going to move their mobile homes more often or a greater distance merely because an additional common carrier is available. The frequency and distance of mobile home moves in the eastern half of the State is clearly unaffected by the availability of an additional carrier. Those moves are going to be made, and it doesn't make any difference for highway maintenance purposes if they are made by Barrett's trucks or Zimbelman's trucks.
Furthermore, Zimbelman's plan to establish terminals in Jamestown and Grand Forks may effectively reduce highway maintenance costs. Presently, if a mobile home resident in Jamestown or Grand Forks has Barrett move his home, Barrett must send an unloaded truck from Fargo or Bismarck, pick up and deliver the home to its destination, and return empty to its home terminal. It is obvious that this may result in additional unnecessary mileage on the State's highways. If a closer terminal were available, actual mileage on State highways may be decreased.
*102 We conclude that the PSC's finding that granting the application would not unduly increase the cost of maintaining highways in the State is amply supported by the record.[1]
The judgment of the district court reversing and modifying the PSC order is reversed, and the order of the PSC is thereby affirmed.
ERICKSTAD, C.J., and PEDERSON and SAND, JJ., and MUGGLI, S.J., concur.
MUGGLI, Surrogate Judge, sitting in place of VANDE WALLE, J., disqualified.
NOTES
[1] Counsel for Zimbelman and the PSC asserted in their briefs and at oral argument that the second consideration listed in Section 49-18-14, N.D.C.C., i.e., the potential increase in highway maintenance costs, is no longer a relevant consideration. They contend that it is a throwback to the days when motor carriers competed primarily with the railroads.

This provision dates back to the original passage of the statute in 1933. 1933 N.D.Sess.Laws Ch. 164, § 8. At that time, the Act was administered by the Board of Railroad Commissioners. 1933 Sess.Laws Ch. 164, § 1. Early cases construing the common carrier regulatory statutes were concerned primarily with the effect upon the railroads of competition from motor carriers. See, e.g., Application of Hvidsten, 78 N.D. 56, 48 N.W.2d 26 (1951); Hvidsten v. Northern Pacific Railway Co., 76 N.D. 111, 33 N.W.2d 615 (1948); Application of Midwest Motor Express, Inc., 74 N.D. 416, 23 N.W.2d 49 (1946); Application of Theel Bros. Rapid Transit Co., 72 N.D. 280, 6 N.W.2d 560 (1942); Tri-City Motor Transp. Co. v. Great Northern Railway Co., 67 N.D. 119, 270 N.W. 100 (1936). We are informed by counsel that for all practical purposes this competition between the railroads and motor carriers no longer exists.
The question raised by counsel regarding the continued relevance of this particular portion of the statute is one for the Legislature rather than this Court. Taking into account the arguments raised by counsel, the Legislature may well deem it appropriate to consider this matter.