Dallas GUTHMILLER, Appellee,

v.

NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES, Appellant.

Civ. No. 870157.

Supreme Court of North Dakota.

March 29, 1988.

---

Hjellum, Weiss, Nerison, Jukkala, Wright & Paulson, Jamestown, for appellee; argued by Thomas E. Merrick.

Sidney J. Hertz Fiergola (argued), Human Services Dept., Bismarck, for appellant.

GIERKE, Justice.

The North Dakota Department of Human Services [the Department] appeals from a district court judgment reversing the Department's decision allowing the interception of Dallas Guthmiller's state and federal income tax refunds. We reverse the judgment of the district court and remand for entry of judgment affirming the Department's decision.

Guthmiller was divorced in 1973 and was ordered to pay $55 per month for the support of his minor child. Guthmiller's former wife applied for and received Aid to Families with Dependent Children [AFDC] benefits from 1975 to 1978. As a condition of receiving benefits, she executed an assignment of child support rights to the Department. During the three-year period

in question, Guthmiller paid a total of $20 toward his support obligation. Arrearages accumulated in the amount of $1,890.

In 1985, the Kidder County Social Service Board petitioned the district court for enforcement of the 1973 support order pursuant to the Uniform Reciprocal Enforcement of Support Act [URESA], Chapter 14–12.1, N.D.C.C. The district court dismissed the petition, holding that the applicable statute of limitations had run, and no appeal was taken.

In 1986, the Department's Child Support Enforcement Unit initiated proceedings to intercept Guthmiller's state and federal income tax refunds. Guthmiller requested a hearing, alleging that the dismissal of the URESA petition precluded the Department from attempting to collect arrearages through the tax intercept program. The Department's Executive Director rendered a decision upholding the interception of Guthmiller's tax refunds.

Guthmiller appealed the agency decision to the district court. The district court reversed, holding that the tax interception procedure was an "action" barred by the six-year statute of limitations contained in Section 28–01–16, N.D.C.C. Judgment was entered reversing the agency decision and ordering that the intercepted tax refunds be returned to Guthmiller. The Department appeals.

When an administrative agency decision is appealed to the district court and then to this court, we review the decision of the agency and not the decision of the district court. *Montana–Dakota Utilities Co. v. Public Service Commission,* 413 N.W.2d 308, 310 (N.D.1987). We review the record compiled before the agency, rather than the findings of the district court. *Application of Zimbelman,* 356 N.W.2d 99, 100 (N.D.1984). Our review of administrative agency decisions is governed by Section 28–32–19, N.D.C.C., and involves a three-step process: (1) Are the findings of fact supported by a preponderance of the evidence? (2) Are the conclusions of law sustained by the findings of fact? (3) Is the agency decision supported by the conclusions of law? *Otto v. Job Service North*

*Dakota,* 390 N.W.2d 550, 551 (N.D.1986); *Application of Zimbelman, supra,* 356 N.W.2d at 100.

■ Guthmiller asserts, and the trial court concluded, that the six-year statute of limitations of Section 28–01–16, N.D. C.C., bars the tax intercept procedures initiated by the Department in this case. Section 28–01–16 provides that certain enumerated "actions must be commenced within six years after the claim for relief has accrued." "Action" is defined in Section 32–01–02, N.D.C.C.:

> "*32–01–02. 'Action' defined.*—An action is an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."

Attempted collection of child support arrearages through the tax intercept procedures is not "an ordinary proceeding in a court of justice," but rather is in the form of an administrative proceeding conducted before the agency. Therefore, the statute of limitations imposed by Section 28–01–16, N.D.C.C., does not apply to the tax intercept procedure.

Guthmiller asserts that, even if not barred by the statute of limitations, the agency could not order interception of his tax refunds because there had not been a prior court order or administrative order determining an arrearage, as required by 42 U.S.C. § 664(c)(1).

Interception of federal tax refunds to collect past-due child support is governed by 42 U.S.C. § 664. The statute establishes a scheme by which the state child support agency is to notify the Secretary of the Treasury of persons who owe past-due child support that has been assigned to the state, and directs the Secretary of the Treasury to intercept tax refunds that would otherwise be paid to those persons. 42 U.S.C. § 664(a)(1); *Sorenson v. Secretary of the Treasury,* 475 U.S. 851, 856, 106 S.Ct. 1600, 1604–1605, 89 L.Ed.2d 855, 863 (1986). Prior to initiating the tax intercept procedure, the state is required to notify

the taxpayer of its intent to do so and to advise the taxpayer of available procedures to challenge the state's determination. 42 U.S.C. § 664(a)(3)(A).

"Past-due support" is defined in 42 U.S. C. § 664(c)(1):

"[A]s used in this part the term 'past-due support' means the amount of a delinquency, determined under a court order, or an order of an administrative process established under State law, for support and maintenance of a child, or of a child and the parent with whom the child is living."

Guthmiller contends that this definition requires a separate court order determining the amount of any delinquency. The Department contends that the court order referred to in the statute is the original order requiring payment of child support. The language of the statute is not entirely clear, and is susceptible of differing interpretations.

It appears that only one court has previously addressed this issue. In *In re Biddle*, 31 B.R. 449, 452 n. 3 (Bankr.N.D.Iowa 1983), the court held that the federal act does not require separate judicial proceedings to determine the amount of the delinquency:

"[T]his requirement does not mean that the state must commence a separate action to determine the amount of a person's delinquency. Rather, the requirement that the 'delinquency [be] determined under court order' refers to the fact that the debtor was initially compelled by a court order in a dissolution or paternity action to make support payments. The delinquency arises when the debtor falls behind in these court ordered payments. The state may use the available collection procedures to recover these delinquencies without having to return to court."

We agree that the federal statute does not require commencement of separate legal proceedings to obtain a court order determining the amount of the delinquency.

The taxpayer is already subject to an existing court order requiring payment of child support. The federal statute requires the state, prior to sending notice to the Secretary of the Treasury, to notify the taxpayer that a withholding will be made and to instruct the taxpayer on available procedures to challenge the determination that past-due support is owed.[1]

■ We conclude that the term "court order" in the definition of "past-due support" in 42 U.S.C. § 664(c)(1) means the original court order requiring payment of child support. We do not believe that Congress intended to require the state to obtain a separate judicial determination of the amount of the delinquency before setting in motion the federal tax intercept procedures. The taxpayer has an opportunity to present any available defenses in the administrative proceedings available to him upon receiving notice of intent to withhold the refund.

■ Guthmiller's state income tax refunds were also intercepted. Interception of state tax refunds is governed by Chapter 57–38.3, N.D.C.C., which establishes procedures for a set off of income tax refunds against debts of the taxpayer owed to an agency of the state. "Debt" is defined in Section 57–38.3–02(3), N.D.C.C.:

" 'Debt' means any liquidated sum due and owing, or required to be collected by, any claimant agency which has accrued through contract, subrogation, tort, or operation of law, *regardless of whether there is an outstanding judgment for that sum.*" [Emphasis added.]

Guthmiller has cited no authority which supports his assertion that a prior court order determining the amount of arrearage is a prerequisite to invocation of the state tax intercept procedure. We conclude that a prior court order determining the amount of the delinquency is not required before invoking the state tax intercept procedures to collect past-due child support assigned to the state.

---

1. In North Dakota, these procedures include the right to an administrative "paper" review and the right to request an evidentiary hearing pursuant to Chapter 75–01–03 of the North Dakota Administrative Code.

Guthmiller asserts that the Department's use of the tax intercept procedures constituted an impermissible collateral attack upon the district court order in the prior URESA proceeding. A collateral attack is an attempt to avoid, defeat, or evade a judgment or order, or to deny its force and effect, in some incidental proceeding not provided for by law, with the express purpose of obtaining relief from that judgment or order. *Hamilton v. Hamilton*, 410 N.W.2d 508, 520 (N.D.1987).

In this case, the prior unappealed order held only that the statute of limitations barred an action to collect arrearages which had accrued over six years earlier.[2] Application of a statute of limitations, however, operates only to bar the remedy and does not extinguish the debt or affect remedies other than the one to which it applies. *Larson v. Quanrud, Brink & Reibold*, 78 N.D. 70, 47 N.W.2d 743, 750 (1950); *Lincoln Nat'l Life Ins. Co. v. Kelly*, 73 N.D. 622, 17 N.W.2d 906, 909 (1945).

Because application of the statute of limitations does not bar the debt or affect other remedies, a subsequent attempt to collect the debt through the administrative tax intercept procedures does not constitute a collateral attack on the prior order. The prior order held only that the remedy sought therein, collection of the arrearages through an URESA proceeding, was unavailable. The subsequent use of the tax intercept procedures does not attempt to avoid, defeat, or evade that determination, nor to deny its force and effect.

We reverse the judgment of the district court and remand for entry of judgment affirming the agency decision.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

---

**2.** Because the issue is not before us, we express no opinion on the district court's determination that the URESA action was barred by the six-year statute of limitations of Section 28–01–16, N.D.C.C.