2003 ND 112

**Michelle VAN KLOOTWYK, Jim Wilhelm, Greg Wilhelm, as heirs and representatives of the Estate of Gladys Wilhelm, deceased; and Michelle Van Klootwyk, Jim Wilhelm, and Greg Wilhelm, as survivors of Gladys Wilhelm, deceased, Plaintiffs and Appellants,**

v.

**BAPTIST HOME, INC., a North Dakota non-profit corporation, Defendant and Appellee.**

**No. 20020325.**

Supreme Court of North Dakota.

July 16, 2003.

Charles "Casey" L. Chapman, Chapman and Chapman, Bismarck, ND, for plaintiffs and appellants.

Steven A. Storslee, Storslee Law Firm, P.C., Bismarck, ND, for defendant and appellee.

NEUMANN, Justice.

[¶ 1] Michelle Van Klootwyk, Jim Wilhelm, and Greg Wilhelm, as heirs and representatives of the estate of Gladys Wilhelm (collectively "Van Klootwyk"), appealed from a judgment and amended judgment dismissing, without prejudice, their wrongful death and personal injury action against Baptist Home, Inc. Because Van Klootwyk's lawsuit is not an action against a physician, nurse, or hospital licensed by the state, we conclude N.D.C.C. § 28–01–46 does not apply and the trial court erred in dismissing the case. We reverse and remand for further proceedings.

I

[¶ 2] In June 1998, Gladys Wilhelm was admitted to the Baptist Home, which is a nursing home located in Bismarck. Wilhelm was 79 years old at the time and had been diagnosed with Parkinson's Disease and Shy–Drager's Syndrome. Wilhelm also suffered from chronic constipation, and her personal physician, who was the Baptist Home medical director, issued standing orders for her treatment.

[¶ 3] On November 19, 1999, the charge nurse on duty at the Baptist Home ordered two certified nurse assistants to administer a Fleet enema to Wilhelm to attempt to relieve her constipation. After administering the enema, the nurse assistants noticed blood in the toilet and contacted the charge nurse. The charge nurse discovered hard stool protruding from Wilhelm's anus, determined digital extraction of the stool was necessary, and performed the procedure. Wilhelm was then placed into bed. A charge nurse who later came on duty discovered a fissure on Wilhelm's anal sphincter and called Wilhelm's physician, who prescribed medication. After Wilhelm continued to suffer rectal bleeding, she was examined by her physician on November 20, 1999, and the physician issued new orders for her care.

[¶ 4] Wilhelm was examined by another physician on November 22, 1999, and was diagnosed with gangrene infection in the rectal area. Physicians agreed Wilhelm would not survive surgery to remove the gangrene infected tissue. Wilhelm was given hospice care at the nursing home and died on November 30, 1999.

[¶ 5] In November 2000, Wilhelm's surviving children commenced this action against the Baptist Home for wrongful death and personal injury. Van Klootwyk alleged:

V.

Employees and/or agents of the Defendant Baptist Home, Inc. failed to fully follow the procedures of the Defendant Baptist Home, Inc. in dealing with the constipation problem of Gladys Wilhelm.

VI.

In addition, one or more of the employees and/or agents of the Defendant

Baptist Home, Inc., in attempting to physically remedy the constipation problem of Gladys Wilhelm, breached the applicable standard of care and negligently caused injury to Gladys Wilhelm.

#### VII.

Following injury to Gladys Wilhelm, the employees and/or agents of Defendant Baptist Home, Inc. failed to adequately care for the injury, thereby exacerbating the effect of the injury.

#### VIII.

As a result of the actions and inactions of the Defendant Baptist Home, Inc. acting by and through its employees and/or agents, Gladys Wilhelm contracted gangrene and died.

#### IX.

The failure of the employees and/or agents of the Defendant Baptist Home, Inc. to satisfy applicable standards of care in the events leading to the death of Gladys Wilhelm constitute negligence.

[¶ 6] In May 2002, the Baptist Home moved for summary judgment of dismissal. The Baptist Home argued Van Klootwyk had failed to comply with the three-month limit for obtaining an admissible supporting expert opinion under N.D.C.C. § 28–01–46, and alternatively, had failed to produce an expert opinion to establish a prima facie case of medical malpractice. Van Klootwyk responded with an affidavit from a Texas physician who opined that "the Baptist Home staff was negligent in causing Mrs. Wilhelm's sphincter tear," "the Baptist Home staff was negligent in its failure to fully and adequately report the nature of that injury to the attending physician," and "the negligence of the Baptist Home staff, in its failure to provide appropriate care to Gladys Wilhelm, led to the gangrene infection, which eventually caused her death." The trial court ruled N.D.C.C. § 28–01–46 applied to Van Klootwyk's action, and because no admissible expert opinion to support the allegations of professional negligence was provided within three months of the commencement of the litigation and Van Klootwyk had not moved to extend the time for obtaining an expert opinion, the court dismissed the action without prejudice. The trial court did not rule on the Baptist Home's alternative theory that Van Klootwyk had failed to produce an expert opinion to establish a prima facie case of medical malpractice.

[¶ 7] Van Klootwyk appealed from a judgment and amended judgment dismissing the action without prejudice. Although the action was dismissed without prejudice, because the statute of limitations has run on Van Klootwyk's claims, the dismissal effectively forecloses further litigation of the claims in this state, and therefore, the judgment and amended judgment are appealable. *See Haugenoe v. Bambrick*, 2003 ND 92, ¶ 2, 663 N.W.2d 175; *Jaskoviak v. Gruver*, 2002 ND 1, 638 N.W.2d 1.

## II

[¶ 8] Summary judgment under N.D.R.Civ.P. 56 is a procedural device for properly disposing of a lawsuit without trial if, after reviewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact or conflicting inferences which can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *Kondrad ex rel. McPhail v. Bismarck Park Dist.*, 2003 ND 4, ¶ 4, 655 N.W.2d 411. The interpretation of a statute is a question of law. *Dennison v. North Dakota Dep't of Human Services*, 2002 ND 39, ¶ 6, 640 N.W.2d 447. Whether the trial court properly granted

summary judgment is a question of law and is reviewed de novo. *Garofalo v. St. Joseph's Hosp.*, 2000 ND 149, ¶ 6, 615 N.W.2d 160.

[¶ 9] In dismissing Van Klootwyk's lawsuit, the trial court relied upon N.D.C.C. § 28–01–46, which provides:

Any action for injury or death against a physician, nurse, or hospital licensed by this state based upon professional negligence must be dismissed without prejudice on motion unless the claimant has obtained an admissible expert opinion to support the allegation of professional negligence within three months of the commencement of the action or at such later date as set by the court for good cause shown by the plaintiff. The expert's affidavit must identify the name and business address of the expert, indicate the expert's field of expertise, and contain a brief summary of the basis for the expert's opinion. This section does not apply to alleged lack of informed consent, unintentional failure to remove a foreign substance from within the body of a patient, or performance of a medical procedure upon the wrong patient, organ, limb, or other part of the patient's body, or other obvious occurrence.

[¶ 10] The statute "attempts to minimize frivolous claims by requiring the plaintiff to produce an expert opinion to support the allegations of negligence in the early stages of litigation." *Haugenoe*, 2003 ND 92, ¶ 10, 663 N.W.2d 175. The statute provides for preliminary screening of totally unsupported claims and seeks to prevent protracted litigation when a medical malpractice plaintiff cannot substantiate a basis for the claim. *Jaskoviak*, 2002 ND 1, ¶ 2, 638 N.W.2d 1. It was enacted to prevent the necessity of an actual trial in those cases. *Greenwood v. Paracelsus Health Care Corp.*, 2001 ND 28, ¶ 8, 622 N.W.2d 195. The statute does not require the plaintiff to complete discovery or to establish a prima facie case during the accelerated three-month time frame, but merely requires the plaintiff to come forward with an expert opinion to support the allegations of malpractice. *Ellefson v. Earnshaw*, 499 N.W.2d 112, 114 (N.D. 1993).

[¶ 11] Van Klootwyk argues the trial court erred in dismissing the action because she has not sued a "physician, nurse, or hospital licensed by the state," the three categories covered by N.D.C.C. § 28–01–46. We agree.

[¶ 12] We summarized the rules of statutory construction in *Public Serv. Comm'n v. Wimbledon Grain Co.*, 2003 ND 104, ¶¶ 20–21, 663 N.W.2d 186:

[O]ur duty is to ascertain the Legislature's intent, which initially must be sought from the statutory language itself, giving it its plain, ordinary, and commonly understood meaning. N.D.C.C. §§ 1–02–02 and 1–02–03. If statutory language is clear and unambiguous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit, because the Legislature's intent is presumed clear from the face of the statute. N.D.C.C. § 1–02–05. If statutory language is ambiguous, a court may resort to extrinsic aids, including legislative history, to interpret the statute. N.D.C.C. § 1–02–39. A statute is ambiguous if it is susceptible to meanings that are different, but rational. *Shiek v. North Dakota Workers Comp. Bureau*, 2002 ND 85, ¶ 12, 643 N.W.2d 721.

Statutes must be construed as a whole and harmonized to give meaning to related provisions, and are interpreted in context to give meaning and effect to every word, phrase, and sentence. *Meljie v. North Dakota Workers Comp. Bu-*

*reau,* 2002 ND 174, ¶ 15, 653 N.W.2d 62; *Doyle ex rel. Doyle v. Sprynczynatyk,* 2001 ND 8, ¶ 10, 621 N.W.2d 353. We presume the Legislature did not intend an absurd or ludicrous result or unjust consequences. *McDowell v. Gillie,* 2001 ND 91, ¶ 11, 626 N.W.2d 666. We construe statutes in a practical manner and give consideration to the context of the statutes and the purposes for which they were enacted. *Grey Bear v. North Dakota Dep't of Human Servs.,* 2002 ND 139, ¶ 7, 651 N.W.2d 611.

Because the mention of one thing in a statute implies the exclusion of another, *Bigwood v. City of Wahpeton,* 1997 ND 124, ¶ 15, 565 N.W.2d 498, we will not broadly interpret the categories listed in N.D.C.C. § 28–01–46 to include health care providers not specifically mentioned in the statute. *See Heimer v. Privratsky,* 434 N.W.2d 357, 359 (N.D.1989) (holding although an optometrist is a professional health care provider, an optometrist is not a physician and N.D.C.C. § 28–01–46 is inapplicable in an action against an optometrist for professional negligence).

[¶ 13] The three-month time period for providing an admissible expert opinion under N.D.C.C. § 28–01–46 applies to "[a]ny action for injury or death against a physician, nurse, or hospital licensed by this state based upon professional negligence." The Baptist Home does not argue that a nursing home is a "hospital" within the meaning of the statute. North Dakota law currently differentiates between hospitals and nursing homes.[1] Compare, for example, N.D.C.C. § 23–30–01(1) (defining "Hospital" as "an institution with an organized medical staff, permanent facilities including inpatient beds, medical services including physician services and continuous nursing services, to provide diagnosis and treatment for medical conditions, both surgical and nonsurgical, and services including rehabilitation services") with N.D.C.C. § 23–30–01(4) (defining "Nursing home" as "an institution in which nursing care is rendered for compensation to two or more persons not related to the operator by blood or marriage, serving persons suffering from a prolonged physical or mental illness or defect, or persons recovering from some injury or disease. Care provided must include: administration of medicines, preparation of special diets, giving of bedside care, application of dressings and bandages, and carrying out treatments prescribed by duly licensed practitioners of the healing arts"). *See also* N.D. Admin. Code § 45–06–07–03(13) (defining "Hospital" as "a duly licensed institution that provides general and specialized inpatient medical care. The term 'hospital' does not include a convalescent facility, nursing home, or any institution or part of an institution which is used principally as a convalescent facility, nursing facility, or facility for the aged").

[¶ 14] Rather, the Baptist Home argues, and the trial court ruled, N.D.C.C. § 28–01–46 is applicable in this case because Van Klootwyk's allegations of

---

1. In *St. Vincent's Nursing Home v. Department of Labor,* 169 N.W.2d 456, 458 (N.D.1969), this Court held a nursing home qualified as a "hospital" for purposes of the exemption provisions of the Labor Management Relations Act, N.D.C.C. ch. 34–12. The Court in *St. Vincent's Nursing Home,* at 457, pointed out, however, that the nursing home had been licensed by the State Department of Health "as a hospital" under N.D.C.C. § 23–16–01, which requires licensure of any "person, partnership, association, corporation, limited liability company, county or municipal corporation, or agency thereof, which maintains and operates organized facilities for the diagnosis, treatment, or care of two or more nonrelated persons suffering from illness, injury, or deformity or where obstetrical or other care is rendered over a period exceeding twenty-four hours."

negligence on the part of the Baptist Home center upon the Baptist Home's vicarious liability [2] for acts performed by, or under the supervision of, its licensed nurse employees, which are specifically listed in the statute. The Baptist Home contends that Van Klootwyk's interpretation of the statute would lead to an absurd result because a plaintiff could control the applicability of the statute simply by naming as a defendant in the lawsuit only the vicariously liable corporate employer of the nurses, rather than the individual nurses themselves, which would frustrate and circumvent the legislative intent and purpose of the law.

[¶ 15] In support of its argument, the Baptist Home relies upon *State v. Nieto*, 993 P.2d 493 (Colo.2000). In *Nieto*, the plaintiff sued the State of Colorado for damages based on the alleged nursing malpractice of one of its employees. Colorado had a certificate of review statute, Colo. Rev. State. § 13–20–602, which at the relevant time provided in part:

(1) In every action for damages or indemnity based upon the alleged professional negligence of a licensed professional, the plaintiff's or complainant's attorney shall file with the court a certificate of review, for each licensed professional named as a party, as specified in subsection (3) of this section, within sixty days after the service of the complaint, counterclaim, or cross claim against such licensed professional unless the court determines that a longer period is necessary for good cause shown.

. . . .

(4) The failure to file a certificate of review in accordance with this section shall result in the dismissal of the complaint, counterclaim, or cross claim.

*Nieto*, at 501–02. The Colorado Court of Appeals held a certificate of review was not required because the State was not a licensed professional named as a party. The Colorado Supreme Court reversed that ruling. The court found the statute to be ambiguous, and after considering the legislative history, concluded:

[T]he General Assembly sought to eliminate any situations in which a claimant could avoid the certificate requirement. Based on our review of the legislative history, it is clear that the certificate requirement was not only to apply to actions in which licensed professionals are named as a party, but also to claims based on the negligence of licensed professional[s].

. . . .

Thus, while the court of appeals is correct in stating that neither the State nor the DOC can be characterized as a licensed professional, Nieto's claim for nursing malpractice falls squarely within the class of claims covered by section 13–20–602.

*Nieto*, at 504.

[¶ 16] The *Nieto* court's reasoning might be persuasive if the relevant language of the Colorado statute was similar to N.D.C.C. § 28–01–46. The Colorado statute, which applies to "every action for damages or indemnity based upon the alleged professional negligence of a licensed professional," is, like the laws of numerous

---

**2.** Vicarious liability, or the doctrine of respondeat superior, means an employer is liable for tortious acts of its employees committed while they are acting within the scope of employment. *Nelson v. Gillette*, 1997 ND 205, ¶ 10, 571 N.W.2d 332. An employer who is held vicariously liable for an employee's actions can obtain indemnification from the employee. *Id.* at ¶ 26. To avoid an insoluble "indemnity cycle," this Court has held the release of a servant or employee also releases the master or employer from liability. *Horejsi v. Anderson*, 353 N.W.2d 316, 320 (N.D.1984).

other jurisdictions, much broader in scope than N.D.C.C. § 28–01–46. *See* Annot., *Medical Malpractice: Who are "health care providers," or the like, whose actions fall within statutes specifically governing actions and damages for medical malpractice*, 12 A.L.R.5th 1 (1993). Section 28–01–46, N.D.C.C., does not provide that the three-month time period applies to any allegation of professional negligence against a physician, nurse, or hospital licensed by this state. Rather, N.D.C.C. § 28–01–46 applies only to "[a]ny *action* for injury or death *against* a physician, nurse, or hospital licensed by this state based upon professional negligence." (Emphasis added). An "allegation" is not synonymous with an "action." The plain and commonly understood meaning of an "action" is "an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." N.D.C.C. § 32–01–02. *See also Guthmiller v. North Dakota Dep't of Human Services*, 421 N.W.2d 469, 471 (N.D.1988); *Lucke v. Lucke*, 300 N.W.2d 231, 235 (N.D.1980); *Greenleaf v. Minneapolis St. Paul Sault Ste. Marie Ry. Co.*, 30 N.D. 112, 119, 151 N.W. 879, 881 (1915). An action "in its usual legal sense means a lawsuit brought in a court." *Black's Law Dictionary* 28 (6th ed.1990). The commonly understood meaning of an "allegation" is the "assertion, claim, declaration, or statement of a party to an action, made in a pleading, setting out what he expects to prove." *Id.* at 74, 151 N.W. 879. Consequently, under the plain meaning of the statute, the three-month time period for providing an admissible expert opinion applies only when a lawsuit based upon professional negligence is brought against a physician, nurse, or hospital.

[¶ 17] The Baptist Home argues our caselaw supports its construction of the statute because this Court has dismissed in their entirety under N.D.C.C. § 28–01–46 lawsuits in which clinics, which are not specifically named in the statute, have been sued along with physicians. *See Larson v. Hetland*, 1999 ND 98, 593 N.W.2d 785; *Larsen v. Zarrett*, 498 N.W.2d 191 (N.D.1993). However, the Baptist Home's reliance on *Hetland* and *Zarrett* is misplaced because the issue was neither raised by the parties nor addressed by this Court. *See Western Nat. Mut. Ins. Co. v. University of North Dakota*, 2002 ND 63, ¶ 21, 643 N.W.2d 4.

[¶ 18] We reject the Baptist Home's assertion that Van Klootwyk's construction of the statute leads to an absurd result. The Legislature certainly could have said the three-month time limit applies to any action for malpractice. *See, e.g.*, N.D.C.C. § 28–01–18(3) (stating two year statute of limitations applies to "[a]n action for the recovery of damages resulting from malpractice"). The Legislature instead limited the application of N.D.C.C. § 28–01–46 to professional negligence actions against a physician, nurse, or hospital. The Legislature could have determined that these three categories constitute the most likely categories in which a medical malpractice case would arise. If the Legislature had intended to include within the ambit of N.D.C.C. § 28–01–46 situations in which an employer is vicariously liable and a physician or nurse are not named parties to the lawsuit, it would have been unnecessary for the Legislature to include a "hospital" as one of the three categories of health care providers to which the limitation period applies.

[¶ 19] "[W]e will not correct an alleged legislative 'oversight' by rewriting unambiguous statutes to cover the situation at hand." *Wimbledon Grain Co.*, 2003

ND 104, ¶ 28, 663 N.W.2d 186 (footnote omitted) (quoting *Selzler v. Selzler*, 2001 ND 138, ¶ 18, 631 N.W.2d 564). We conclude the trial court erred in dismissing Van Klootwyk's lawsuit because it is not an action against a physician, nurse, or hospital within the meaning of N.D.C.C. § 28–01–46.

### III

[¶ 20] Because the trial court ruled N.D.C.C. § 28–01–46 applied in this case and Van Klootwyk failed to comply with the three-month time limit for obtaining an admissible expert opinion, the court did not address the Baptist Home's alternative argument that summary judgment was nevertheless appropriate because Van Klootwyk failed to produce an expert opinion to establish a prima facie case of medical malpractice. Although the three-month time limit under N.D.C.C. § 28–01–46 is not applicable to this action, expert testimony is still required to support a prima facie claim of medical malpractice, unless the breach of duty is so egregious that a layman is capable of comprehending its enormity. *Zarrett*, 498 N.W.2d at 192. A prima facie case consists of expert evidence establishing the applicable standard of care, violation of that standard, and a causal relationship between the violation and the harm complained of. *Id.* Summary judgment of dismissal is appropriate if the plaintiff fails to present expert evidence establishing a prima facie case. *See Winkjer v. Herr*, 277 N.W.2d 579, 589 (N.D.1979). Consequently, we remand the case to the trial court to consider the Baptist Home's alternative ground for summary judgment of dismissal.

### IV

[¶ 21] Our resolution of this appeal renders it unnecessary to address the other issues raised by the parties. We reverse the judgment and amended judgment and remand for further proceedings.

[¶ 22] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.

KAPSNER, Justice, concurring.

[¶ 23] I reluctantly concur.

[¶ 24] The concessions made by appellant at oral argument demonstrate the validity of the Baptist Home's argument that a plaintiff can sometimes control the applicability of the statute by naming a defendant who is not within the categories specified in N.D.C.C. § 28–01–46. This is so even when the potential for liability is based solely upon the vicarious liability of the employer, the named defendant, for acts of employees who are within the categories of persons to whom the statute applies.

[¶ 25] Counsel for appellant conceded at oral argument that this lawsuit was only directed at members of the staff of Baptist Home who either were nurses or were acting at the direction of a nurse. This case is about allegations of nursing malpractice. The result foregoes the benefit envisioned by N.D.C.C. § 28–01–46, of having an expert opinion early in the litigation indicating that the claims have been evaluated and can be supported, in an action focused on claims of nursing negligence but naming only the employer. However, applying ordinary principles of statutory interpretation, that is the required result. The legislature will have to address expansion of the categories to whom N.D.C.C. § 28–01–46 applies, if this result does not accord with legislative intent.

[¶ 26] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, MARY MUEHLEN MARING, JJ., concur.