Theressa S. VanVLEET, Plaintiff and Appellant,

v.

Delano M. PFEIFLE, M.D., Helmut Arnold, M.D., and Ronald R. Henrickson, M.D., Defendants and Appellees.

Civ. No. 9667.

Supreme Court of North Dakota.

Feb. 28, 1980.

Rehearing Denied March 21, 1980.

782

Frederick E. Saefke, Jr., Bismarck, for plaintiff and appellant.

Zuger & Bucklin, Bismarck, and Fleck, Mather, Strutz & Mayer, Bismarck, for defendants and appellees; argued by William P. Zuger and William A. Strutz, Bismarck.

SAND, Justice.

Theressa VanVleet appealed from a summary judgment of the Burleigh County district court granted in favor of the medical doctors Delano Pfeifle, Helmut Arnold, and Ronald Henrickson in a malpractice action for the wrongful death of her husband, Donald VanVleet. We reverse the order granting summary judgment and remand the matter for trial.

On 22 Apr 1976 Donald VanVleet entered the Quain & Ramstad Clinic in Bismarck, North Dakota, for a physical examination by Dr. Delano Pfeifle after complaining of coughing up blood and frequent headaches. Pfeifle referred VanVleet to Dr. Helmut Arnold, an ear, nose, and throat specialist, to check for the source of the upper respiratory bleeding. Arnold's examination proved negative, and a chest x-ray taken at that time also revealed no active pathology in VanVleet.

VanVleet returned to Arnold on 24 June 1976, and again complained of spitting up

blood. Arnold's examination did not disclose the source of bleeding, and he (Arnold) entered a notation on VanVleet's chart that a bronchoscopy[1] should be performed on VanVleet to rule out any serious pathology. The record did not state whether or not his thought on having a bronchoscopy performed was communicated to VanVleet or to Pfeifle, or any other physician. In any event, there was no bronchoscopy performed on VanVleet at that time.

The next day, 25 June 1976, VanVleet went to the office of Dr. Ronald Henrickson to obtain a second medical opinion on his physical condition. VanVleet related to Henrickson a history of recurrent bleeding from the right side of his nose, but, upon examination, Henrickson found an active bleeding site on the left side of the nose. Henrickson determined that the bleeding was the result of a nasal septal deformity caused by an automobile accident injury which occurred approximately 13 years previous. Nevertheless, Henrickson ordered a chest x-ray of VanVleet as a guard against some alternative cause. The x-ray showed no active disease.

VanVleet was admitted to St. Alexius Hospital in Bismarck, North Dakota, on 20 July 1976 for reconstructive nasal surgery to correct the bleeding. Immediately following the surgery, Henrickson observed no further coughing or spitting of blood. Postoperatively, VanVleet was examined by Henrickson on 27 July 1976, and 9 September 1976. No evidence of coughing or spitting of blood was found by Henrickson on either of those occasions.

On 8 Apr 1977, VanVleet reported to Henrickson that he had been coughing up blood for three or four days. Henrickson examined VanVleet and was convinced that the bleeding had no causal relationship to that which had been surgically corrected the previous July. Henrickson contacted Pfeifle and the two physicians discussed the possible causes of VanVleet's bleeding. Pfeifle then arranged to examine VanVleet again.

1. A bronchoscopy is an examination of the interior of the windpipe and bronchial tubes with a lighted instrument to detect cancer and other upper respiratory diseases.

At Pfeifle's direction, another x-ray was taken of VanVleet's chest on 13 Apr 1977. The results of this x-ray were abnormal and raised the possibility of a pulmonary malignancy (lung cancer). A bronchoscopy was then ordered by Pfeifle and subsequently performed by Dr. Grandon Tolstedt on 19 Apr 1977. The bronchoscopy revealed a tumor in VanVleet's lung which was biopsied at that time by Tolstedt. The tumor was positively diagnosed as cancerous by Tolstedt following an analysis of lung tissue cells which were washed out and aspirated during the bronchoscopy procedure. Although surgery was performed soon after the bronchoscopy, VanVleet died of lung cancer on 28 May 1977.

Following VanVleet's death, his widow, Theressa VanVleet, commenced this action against Drs. Pfeifle, Arnold, and Henrickson for the wrongful death of her husband. The complaints alleged that Drs. Pfeifle, Arnold, and Henrickson negligently failed to have a timely bronchoscopy performed on Donald VanVleet and negligently failed to advise him to have one performed, thereby resulting in his death earlier than it otherwise would have occurred.

The defendants moved the district court for summary judgment on the grounds that Theressa VanVleet failed to produce competent expert medical evidence to support her claims. The district court granted the summary judgment motion and stated as follows:

"When the decedent sought medical assistance, he was afflicted with a condition. The doctors are not responsible for that condition. There was, at that time, a chance that he might have survived had the condition been diagnosed. The conduct of the doctors (assuming it to be as claimed by the plaintiff) wrongfully deprived him of that *chance of survival.* That is the wrong for which they should be held accountable. That opportunity for life, remote though it may have been, was something of value to the decedent for which he, or, in this instance, his estate, by virtue of our survival statute, is entitled to seek compensation. That

the opportunity for life existed is a provable fact, whereas the plaintiff's claim that the defendants wrongfully caused her husband's death is not.

"Since the plaintiff did not establish that the claimed negligence of the defendants either caused or hastened the death of the decedent, the motion for summary judgment is granted."

Theressa VanVleet appealed the summary judgment order of the district court.

The district court made a critical distinction in this case between an action by the estate of Donald VanVleet for the deprival of "an opportunity for life" and an action by Theressa VanVleet for the wrongful death of her husband. The district court concluded that the VanVleet estate could possibly prove the existence of an "opportunity for life" and be compensated for its deprival, but that Theressa VanVleet's claim that the doctors wrongfully caused her husband's death could not be proved. We disagree with the district court and believe that proof of a severed opportunity for Donald VanVleet's life could also form the foundation of an action for wrongful death.

If the theory of the defendants were extended, an action for wrongful death could never be successfully maintained because every person is destined to die, and therefore a negligent act or omission would have merely accelerated the natural death.

The North Dakota wrongful death act, Ch. 32–21, NDCC, entitles the surviving spouse of a person whose death was wrongfully caused by the negligent actions of another to maintain an action and recover damages in the same manner as the decedent was entitled if death had not ensued. Section 32–21–01, NDCC.

The common law practice of strict pleading is not followed in North Dakota. This is evidenced by the North Dakota Rules of Civil Procedure, Rules 1, 2, 8, etc.

The district court acknowledged that the estate of Donald VanVleet was entitled to recover damages if it was shown that VanVleet's chances for survival, or at least

living longer, were lessened by the doctors' negligence in diagnosis. We think it follows, under the wrongful death act, that if the doctors in this case were negligent in failing to discover Donald VanVleet's cancerous condition and thereby hastened and prematurely caused his death, the doctors should not be able to escape liability simply because the cancer would eventually have resulted in VanVleet's death even if it were discovered sooner.

We now turn to the determination of whether or not genuine issues of material fact existed so as to preclude the granting of summary judgment under Rule 56 of the North Dakota Rules of Civil Procedure.

The purpose of summary judgment is to allow for the prompt disposition of a controversy on the merits, without a trial, when there is no real dispute as to the salient facts or when only a question of law is involved. *Pioneer State Bank v. Johnsrud*, 284 N.W.2d 292 (N.D.1979). A summary judgment motion should be granted only if, after reviewing the evidence in a light most favorable to the party against whom summary judgment was demanded, there is no genuine issue of any material fact, and the party seeking summary judgment is entitled to it as a matter of law. *Farmers Elevator Co. v. David*, 234 N.W.2d 26 (N.D. 1975). Here, the district court's grant of summary judgment would have been proper only if, after reviewing the record in a light most favorable to Theressa VanVleet, there was no genuine issue of a material fact.

■ Generally, a prima facie case of medical malpractice must consist of evidence establishing the applicable standard of care, violation of that standard, and a causal relationship between the violation and the harm complained of. *Winkjer v. Herr*, 277 N.W.2d 579 (N.D.1979). The physicians in this case contended that there was no genuine issue of fact as to a causal relationship between any professional negligence of their part and the death of Donald VanVleet. They maintained that the circumstances of this case were such that no medical person could testify as a matter of reasonable medical probability that dece-

dent's life would have been extended had the cancer been discovered sooner.

■ The principles of law upon which the defendants based this argument were sound. When a medical malpractice case involves issues of a complex medical nature which are not within the common knowledge of laymen, expert medical testimony is essential to support a factual determination by the jury that the doctor was negligent. *Wasem v. Laskowski*, 274 N.W.2d 219 (N.D. 1979). Further, to support a finding of medical negligence, the expert testimony on such a complex medical issue as the causal relationship between a physician's action and his patient's death must address definite probabilities, and not involve, to an excessive degree, the element of speculation or conjecture. *Vaux v. Hamilton*, 103 N.W.2d 291 (N.D.1960).

There are, however, other considerations for denying summary judgment in malpractice cases, especially when the grounds therefor are a lack of expert testimony. In *Winkjer v. Herr, supra*, a malpractice action against an ophthalmologist, we stated as follows:

"We are well aware of the contention that the reluctance of the members of the medical profession to testify against a fellow physician makes the search for a medical expert very difficult and nearly impossible in some cases. For this reason we agree with those appellate courts which have stated trial courts should be extremely cautious in entering summary judgment in medical malpractice cases because of a lack of expert testimony." 277 N.W.2d at 589.

■ It is also the rule in North Dakota that issues of negligence, contributory negligence and proximate cause are ordinarily to be tried by the jury or the court in the usual manner, and such issues should not be determined in summary judgment proceedings. *Hart v. Kern*, 268 N.W.2d 136 (N.D. 1978); *Kirton v. Williams Electric Cooperative, Inc.*, 265 N.W.2d 702 (N.D.1978); *Wolff v. Light*, 156 N.W.2d 175 (N.D.1968).

■ The evidence in the record before us indicated that one of the symptoms of lung cancer was the coughing up of blood. The record further revealed that Donald Van-Vleet exhibited this symptom in both April and June 1976, when he was examined by Drs. Pfeifle and Arnold.

Pfeifle stated in his deposition that a bronchoscopy is used along with a chest x-ray to aid in diagnosing the cause of coughing up blood. Dr. Tolstedt, the physician who ultimately diagnosed VanVleet's lung cancer on 19 Apr 1977, also stated that, in his opinion, when a patient is coughing up blood and one cannot explain this by any other means, an evaluation by bronchoscopy is an indicated procedure.

When Donald VanVleet was examined by Arnold on referral from Pfeifle on 24 June 1976, Arnold recommended that a broncho-scopy be performed on VanVleet. This recommendation was not carried out by either Arnold or Pfeifle, and Pfeifle testified at deposition that he was never even informed of Arnold's 24 June 1976 examination of VanVleet until the initiation of this lawsuit in February 1978. Tolstedt deposed that it was Arnold's obligation to inform Pfeifle, the referring physician, of his bronchoscopy recommendation if he was not going to personally perform it.

As to the degree of certainty of VanVleet's chances for survival or a prolonged life had the cancer been diagnosed sooner, Tolstedt's deposition stated as follows:

"A   We, as surgeons, like to feel that the earlier we get a cancer of a lung treated properly, the better chances of survival there are. However, we know that cancer of the lung is a very bad cancer, that the vast majority of patients could not survive no matter how early you get them, and that his chances of survival were very small merely by the fact that he had a cancer present. Yet, we do like to feel that a very early lesion can be cured.

"Q   What is the probability of curing the lesion if it's found early?

"A   A location where Mr.—Mr. VanVleet had, namely in the main bronchus, which is just beyond the trachea, the probability of cure is comparatively small, because it is—it seems to spread to the lymph nodes early. And, therefore, we consider it is not common that they will be cured, even in early lesions.

"Q   Do you have any estimates as to what the mortality rate would be?

"A   Well, I can give you statistics. And in this type of cancer all patients that come in with it, less than five percent—or, I say five percent of the patients are cured of the cancer. However, certainly, the cure rate would be far better than that if we had an early lesion that we were able to resect completely. I think that one might approach a significantly better percentage than five percent."

The affidavit of Theressa S. VanVleet, among other things, stated:

"That after the surgery by Dr. Tolstedt, and while affiant was in the waiting room, Dr. Pfeifle came to her, took her out of the room and stated, as she remembers, 'I don't know how I could have missed that, or I don't know why I didn't find that'."

While this affidavit may not be introduced into evidence per se this does not prevent affiant from testifying as a witness to the same material. This statement leaves an impression that if a proper examination had been made, or if Dr. Pfeifle had been more exacting, the nature of the affliction of VanVleet would have been discovered, and in accordance with other medical testimony there was a probability that life would have been sustained for a greater number of years, or possibly he could have been cured. This, of course, is a fact question.

We think that the above circumstances and testimony, together with the totality of the evidence in the record, raised a genuine issue of fact in this case as to a causal relationship between the actions of the three physicians and the subsequent death

of Donald VanVleet. Summary judgment, therefore, was improperly entered in this wrongful death action and we reverse that order and remand the matter for trial.

PAULSON, Acting Chief Justice, and JAMES H. O'KEEFE, WILLIAM M. BEEDE and NORMAN J. BACKES, District Judges, concur.

The Honorable RALPH J. ERICKSTAD, Chief Justice, the Honorable VERNON R. PEDERSON, the Honorable GERALD W. VANDE WALLE, Justices, disqualified; the Honorable JAMES H. O'KEEFE, the Honorable WILLIAM M. BEEDE, the Honorable NORMAN J. BACKES, District Judges, sitting.