**Nadine HEIMER, Plaintiff and Appellant,**

v.

**R.A. PRIVRATSKY, O.D., R.A. Privratsky, O.D., Ltd., and Joan Sailer, Defendants and Appellees.**

Civ. No. 880081.

Supreme Court of North Dakota.

Jan. 9, 1989.

---

Rolf P. Sletten, Bismarck, for plaintiff and appellant.

Lance D. Schreiner, of Zuger, Kirmis, Bolinske & Smith, Bismarck, for defendants and appellees.

VANDE WALLE, Justice.

Nadine Heimer brought this negligence action against R.A. Privratsky, a licensed optometrist, R.A. Privratsky, O.D., Ltd., a North Dakota corporation, and Joan Sailer, an employee of the corporation. We reverse the summary judgment and remand for further proceedings.

In her complaint Heimer alleges that on December 5, 1984, she sought the services of the defendants, ostensibly for the purpose of being fitted for contact lenses. The complaint further alleges:

"VII.

"That on or about December 5, 1984, Defendant, R.A. Privratsky, O.D., negligently permitted or caused a toxic substance to contact Plaintiff's eye in the course of fitting Plaintiff with a contact lens.

"VIII.

"That the Defendant, R.A. Privratsky departed from contemporary standards of care, skill and knowledge in connection with the fitting of contact lenses in that the Defendant failed to fit the contact lens properly, failed to take proper steps to insure that no toxic substance was introduced into Plaintiff's eye, and failed to explain to Plaintiff the risks associated with the procedure."

The complaint makes the same allegations against Joan Sailer.

The defendants moved for summary judgment, asserting that there was no genuine issue as to any material fact. The court concluded that because this action was one sounding in professional negligence, either Section 28-01-46, N.D.C.C., or the holding of *Winkjer v. Herr*, 277 N.W.2d 579 (N.D.1979), apply and therefore Heimer must support her claim with expert testimony. On September 23, 1987, the trial court denied the motion but stated that the motion was subject to reconsideration if Heimer failed to identify an expert by November 2, 1987. The November 2, 1987, deadline was later extended to December 2, 1987.[1]

The defendants subsequently submitted a motion for reconsideration of the motion for summary judgment on the ground that Heimer failed to comply with the trial court's order. The court granted the motion for summary judgment because Heimer failed to provide the name of the expert witness she proposed to call at trial. In considering the motion for summary judgment the trial court stated that Heimer did not claim that her action was based upon the exception to the rule requiring expert testimony in professional negligence actions.

■ As a prelude to our discussion of the issues raised by Heimer we note we have previously expressed our reluctance to approve summary judgment in negligence actions. See, e.g., *Barsness v. General Diesel & Equipment Co.*, 383 N.W.2d

1. We note that although Heimer requested and received more time in which to obtain an expert, she did not produce an expert. Rather, when the deadline had expired, she renewed her argument that expert testimony was unnecessary in an action against an optometrist.

840 (N.D.1986); *Van Vleet v. Pfeifle,* 289 N.W.2d 781 (N.D.1980); *Kirton v. Williams Elec. Co-op., Inc.,* 265 N.W.2d 702 (N.D.1978). Trial courts should be extremely cautious in entering summary judgment in medical malpractice cases because of a lack of expert testimony. *Winkjer v. Herr,* 277 N.W.2d 579 (N.D. 1979). Nevertheless, summary judgment may be appropriate even in negligence cases. See, e.g., *Herman v. Magnuson,* 277 N.W.2d 445 (N.D.1979).

On appeal, Heimer argues that neither Section 28-01-46, N.D.C.C., nor the holding of *Winkjer v. Herr* requiring expert testimony apply to this case; and even if either the statute or *Winkjer* apply, this case falls within the obvious-occurrence exception to the rule requiring expert testimony and therefore no expert testimony is required.

■ We agree that Section 28-01-46 does not apply to optometrists. That section provides:

> "Any action for injury or death against a physician, nurse, or hospital licensed by this state based upon professional negligence shall be dismissable on motion unless the claimant has obtained an admissible expert opinion to support the allegation of professional negligence within three months of the commencement of the action or at such later date as set by the court. This section shall not apply to alleged lack of informed consent, unintentional failure to remove a foreign substance from within the body of a patient, or performance of a medical procedure upon the wrong patient, organ, limb, or other part of the patient's body, or other obvious occurrence."

The trial court found that the term "physician" in Section 28-01-46 is so broad and general that it also encompasses optometrists. We disagree. Although the term "physician" is not defined in Chapter 28-01, it is defined elsewhere in the Century Code. Section 43-17-01(1) provides that "physician" shall include "physician and surgeon (M.D.) and osteopathic physician and surgeon (D.O.)." Although an optometrist is a professional health-care provider,[2] he is not a physician. Therefore, Section 28-01-46 is inapplicable in an action against an optometrist for professional negligence.

■ However, the legislative history of Section 28-01-46 (H.B. 1619, 1981 Legislative Assembly) does not indicate an intent to limit the requirement of expert witnesses to professional negligence actions involving physicians, nurses, and hospitals, nor does it reveal an intent to expand the definition of "physician." Rather, the legislative history indicates that Section 28-01-46 is designed simply to minimize frivolous claims against physicians, nurses, and hospitals. Thus the fact there is legislation requiring expert testimony in actions against physicians, nurses, and hospitals indicates no intent on the part of the Legislature to restrict the necessity of expert testimony to actions involving only those three. See, e.g., *Wastvedt v. Vaaler,* 430 N.W.2d 561 (N.D.1988) [expert testimony required in legal malpractice actions].

Therefore, although Section 28-01-46 does not apply on its face to an optometrist, our holding in *Winkjer v. Herr* does. In *Winkjer,* 277 N.W.2d at 583, we stated that in order to present a prima facie case of medical malpractice, and thus avoid summary judgment, one must generally establish "the applicable standard of care, violation of that standard, and a causal relationship between the violation and the harm complained of." We further stated:

> "Evidence as to the degree of care and skill required of a physician in diagnosing or treating one's ailment, as well as any departure from that standard, must generally be established by expert testimony.... Thus one claiming medical malpractice cannot ordinarily have his case submitted to a jury without expert testimony supporting his claim of professional negligence." 277 N.W.2d at 585.

An optometrist is one who is engaged in "the evaluation of disorders of the human eye and the examination, diagnosis, and treatment thereof, together with its ap-

**2.** See Section 43-13-01, N.D.C.C.

pendages." Sec. 43–13–01(2), N.D.C.C. Optometry is a primary health-care profession. *Id.* There are strict legal and educational prerequisites that must be complied with in order to practice optometry. See Chapter 43–13, N.D.C.C. Therefore, the liability of an optometrist is to be tested by standards analogous to the standards of physicians and surgeons. See also *Tempchin v. Sampson*, 262 Md. 156, 277 A.2d 67 (1971); *Dolan v. O'Rourke*, 56 N.D. 416, 217 N.W. 666 (1928).

Having decided that the standard of care of an optometrist is to be measured the same way as the standard of care of physicians and surgeons, i.e., whether the optometrist exercised the reasonable care and skill normally exercised by optometrists, it is a simple and logical step to conclude that expert testimony is generally required in actions against optometrists for professional negligence.

■ But an exception applies when the professional's misconduct is so egregious and obvious that a layperson can comprehend the professional's breach of duty without the assistance of expert testimony. See *Wastvedt v. Vaaler, supra.* Whether expert testimony is essential in a particular case depends upon the facts of that case. *Id.*

■ Here, although no expert testimony was proffered, Heimer contends the obvious-occurrence exception to that requirement applied. As we previously noted, the trial court apparently believed the exception was not raised as it stated that Heimer made no claim that her action was based at least in part upon the exception to the rule requiring expert testimony. But, in her brief in opposition to defendants' motion for summary judgment, Heimer referred to the obvious-occurrence exception in *Winkjer v. Herr* and in fact quoted from it as follows:

> "expert testimony is not necessary where the matters to be proved fall within an area of common knowledge and developing lay comprehension of medical techniques and where the results of surgical or medical treatment, viewed in light of all the circumstances, provide a suffi-

cient evidentiary basis to support an inference of negligence." 277 N.W.2d at 585, quoting *Hestbeck v. Hennepin County*, 297 Minn. 419, 212 N.W.2d 361, 364 (1973).

Heimer then stated, "Certainly it is common knowledge that a person who visits an optometrist should not be subjected to having an eye burned by a chemical that is obviously extremely injurious to the eye and that if such an event occurs then the person responsible for placing the chemical in the eye has acted negligently." We believe Heimer adequately raised the issue of whether the alleged conduct fell under the exception to the rule requiring expert testimony.

Heimer claims that allowing a "dangerous toxic foreign substance" to come in contact with someone's eye is so obviously negligent that no expert testimony is necessary. However, she does not indicate what the toxic substance was or the circumstances surrounding the event in question.

In *Myrlie v. Hill*, 58 S.D. 330, 236 N.W. 287 (1931), the South Dakota Supreme Court was faced with a similar issue. In that case, the plaintiff had a sty in her left eye. The defendant, a physician, lanced the upper lid and drained the fluid. The defendant's assistant treated the eye with medication once each day over the following four days. On the fourth day, unlike the prior three, when the medication was applied, the medicine burned like a hot poker and smelled like iodine, according to the plaintiff's testimony. The plaintiff sued, claiming that the assistant negligently instilled into plaintiff's eye a liquid which partially destroyed plaintiff's sight.

There was expert testimony that the substance applied to the plaintiff's eye could not have been iodine and, even if it were, could not have caused the damage complained of. There was no expert testimony, however, regarding whether the defendant was negligent. From a judgment in favor of the plaintiff the defendant appealed, claiming that there must be expert testimony showing negligence and that the injury complained of was caused by that negli-

gence. In rejecting the argument, the court stated:

> "It is true that this imposes the responsibility upon jurors and trial judges of seeing that those who practice the healing art are not made the victims of perjured testimony from designing patients. On the other hand, one who is, in fact, the victim of negligence, where it is not a question of lack of professional skill or knowledge, but of carelessness, should not be deprived of her right to damages because she cannot name the fluid which blinded her, nor because she cannot procure the testimony of medical experts, that beyond any peradventure of doubt the eye through which she could formerly see clearly was scarred as a result of the application of a named medicine. The possibility of injustice is great either way." 58 S.D. at 337, 236 N.W. at 291.[3]

In the present case, the only information contained in the record on appeal is that one of the defendants placed a toxic substance in Heimer's eye, that within a matter of minutes she was in extreme pain, and that approximately one hour after the substance was placed in her eye she was unable to see from that eye. The trial court, believing the issue was not before it, did not consider the obvious-occurrence exception and we are unable to discern whether or not the conduct complained of fell within the obvious-occurrence exception.[4]

Because we find the obvious-occurrence issue was raised at the trial court level and in this court, the summary judgment is reversed and the action is remanded in order that the trial court may consider whether the alleged conduct of the defendants falls under the exception to the rule requiring expert testimony in medical malpractice actions.

ERICKSTAD, C.J., and GIERKE, MESCHKE and LEVINE, JJ., concur.

---

**3.** For other cases holding that expert testimony is not always necessary in an action against an eye-care provider for negligence, see *Lanier v. Trammel,* 207 Ark. 372, 180 S.W.2d 818 (1944) [no expert testimony required when there was no dispute that eye specialist should cleanse his hands and sterilize instruments prior to performing operation; the only question being whether the defendant followed these steps]; *Dean v. Dyer,* 64 Cal.App.2d 646, 149 P.2d 288 (1944) [no expert testimony required where it was fully shown that the plaintiff's eye was in good condition before the substance was placed in the eye and immediately afterward plaintiff lost sight in his eye; nor was it necessary to identify the substance placed in the eye].

**4.** We note that the defendants served interrogatories upon Heimer which apparently were answered with the exception of the interrogatories relating to expert witnesses. While it is true that discovery materials generally are not to be filed, they should be included in the record on appeal if they are relevant to disposing of the case. See Rule 5(d), N.D.R.Civ.P. Apparently the trial court had the answers to defendants' interrogatories, a benefit we do not have.