Donald L. RAWLINGS, for the benefit of himself, Barbara Rawlings, Lisa Rawlings and the North Dakota Workmen's Compensation Bureau, and as assignee of Charles D. Sweeney, Plaintiff and Appellant,

v.

William FRUHWIRTH, Defendant,

and

Duane Larson and First American Insurance Company of Larimore, Defendants and Appellees.

Civ. No. 900021.

Supreme Court of North Dakota.

April 25, 1990.

Stefanson, Landberg & Plambeck, Moorhead, Minn., for plaintiff and appellant; argued by Todd W. Foss.

Vaaler, Gillig, Warcup, Woutat, Zimney & Foster, Grand Forks, for defendants and appellees; argued by Thomas L. Zimney.

ERICKSTAD, Chief Justice.

Donald Rawlings appeals from a summary judgment dismissing his claim for negligence against Duane Larson and First American Agency, Inc. (First American).[1] We affirm.

This case is a negligence action against two Larimore, North Dakota insurance agents: William Fruhwirth, d/b/a Larimore Insurance Agency and Duane Larson, employed by First American Agency, Inc. It is an offshoot of a wrongful death action entitled *Donald L. Rawlings v. Charles D. Sweeney*, Grand Forks County District Court, case no. 86131, which ended in a settlement. As part of the settlement, Charles Sweeney assigned his cause of action against Fruhwirth and Larson to Donald Rawlings, the appellant in this case.[2]

On July 17, 1985, a motor vehicle accident occurred involving Charles Sweeney and Gerald Rawlings, Donald's son. Gerald died as a result of injuries sustained in the accident. At the time of the accident, Sweeney had automobile liability insurance with General Casualty Company with a limit of $25,000, which had been obtained through Fruhwirth. Sweeney also had an umbrella policy written by St. Paul Fire and Marine which was obtained through Larson. The umbrella policy covered liability from $250,000 to $1,250,000. Thus, on July 17, 1985, when the accident occurred, there was a gap in Sweeney's liability insurance coverage between the $25,000 limit of the auto insurance and the $250,000 of the umbrella policy.[3]

Rawlings contends that Larson breached his duties as Sweeney's insurance agent in the following three ways:

"1. Larson breached a duty to procure insurance requested by Sweeney;

"2. Larson breached a duty to protect Sweeney from gaps in coverage; and

"3. Larson made a negligent misrepresentation regarding the availability of insurance."

In the second amended complaint dated October 17, 1988, Rawlings alleged:

"Larson, while acting as the insurance agent for Sweeney, breached certain duties and responsibilities to Sweeney and to third-parties to whom Sweeney might become liable, and failed to exercise such reasonable skill and ordinary diligence as may fairly be expected from a reasonably prudent insurance agent in Larson's situation by exposing Sweeney to personal liability as a result of a gap in coverage."

On March 17, 1989, Larson and First American moved for summary judgment. After considering briefs and oral argument of the parties, the district court, on July 25, 1989, granted the motion for summary judgment. In its memorandum decision, the district court, in pertinent part, said:

"Sweeney specifically requested the umbrella policy from Larson in November 1983 and Larson wrote this policy for Sweeney. Sweeney stated on a number of occasions that he did not ask Larson to procure additional liability insurance to fill the gap between the existing liability policy (written by Fruhwirth) and the umbrella policy written by Larson. There is no question of fact as to whether Larson fulfilled his duty to procure insurance for Sweeney that was expressly requested.

"A duty to procure additional insurance not expressly requested must be based on a special relationship between the agent and the insured. [*Born v.*

---

1. The parties have generally acknowledged that the true name of the party referred to in the pleadings as First American Insurance Company of Larimore is First American Agency, Inc.

2. Pursuant to a stipulation of dismissal, Rawlings settled with Fruhwirth subsequent to the issuance of the summary judgment. Rawlings appeals only from that part of the final judgment dated January 12, 1990, which dismissed his cause of action against Duane Larson and First American Agency, Inc.

3. Under the terms of the settlement agreement reached in the wrongful death case, a judgment against Sweeney was entered in the amount of $500,000. Partial satisfaction was made by Sweeney's automobile insurer, General Casualty Company, in the amount of $28,303.18 and by Sweeney's umbrella insurer, St. Paul Fire and Marine in the amount of $250,000, leaving an unsatisfied judgment against Sweeney in the amount of $221,696.82.

*Medico Life Ins. Co.,* 428 N.W.2d 585, 589 (Minn.Ct.App.1988) ]. The Plaintiff has not alleged that a special relationship existed. From the facts of this case, no special relationship between Sweeney and Larson can be inferred.

\* \* \* \* \* \*

"Here, even viewing the evidence most favorable to the Plaintiff, there are no facts showing any special relationship between Sweeney and Larson that would impose a greater duty on Larson. Sweeney rarely dealt with Larson. Sweeney maintained his auto insurance with Fruhwirth both before and after contacting Larson. Under these circumstances, Larson had no duty to procure insurance to fill the gap between Sweeney's liability policy and his umbrella policy.

"Sweeney did not rely on Larson to provide him with additional coverage. Larson advised Sweeney to go to Fruhwirth to fill the gap in coverage. Since Sweeney did not expect Larson to get the coverage and went to Fruhwirth for that coverage, it is apparent that there was no reliance on Larson's statement. The Rust affidavit states that Fruhwirth could have provided Sweeney with the coverage. Sweeney has stated he relied on Fruhwirth to procure the additional coverage."

We have previously stated the criteria necessary to determine the propriety of granting a Rule 56, N.D.R.Civ.P., summary judgment as follows:

" 'Summary judgment is appropriate to promptly and expeditiously dispose of controversies without trial when, after viewing the evidence in the light most favorable to the party against whom summary judgment is sought and giving her the benefit of all favorable inferences, only a question of law is involved or there is no genuine dispute over either the material facts or inferences to be found from undisputed facts. [Citations omitted.] Even when a factual dispute exists summary judgment is proper if the law is such that the resolution of the

factual dispute will not change the result.' "

*Schill v. Langdon Farmers Union Oil Co.,* 442 N.W.2d 408, 410 (N.D.1989).

We have also previously expressed our reluctance to approve summary judgment in negligence actions. *See Heimer v. Privratsky,* 434 N.W.2d 357 (N.D.1989); *Barsness v. General Diesel & Equipment Co.,* 383 N.W.2d 840 (N.D.1986); *VanVleet v. Pfeifle,* 289 N.W.2d 781 (N.D.1980); *Kirton v. Williams Elec. Co-op., Inc.,* 265 N.W.2d 702 (N.D.1978). Nevertheless, summary judgment may be appropriate even in negligence cases. *Heimer, supra* at 359; *See also Benjamin v. Benjamin,* 439 N.W.2d 527 (N.D.1989); *Morrison v. Grand Forks Housing Auth.,* 436 N.W.2d 221 (N.D.1989).

Rawlings, in his brief, likens his cause of action to a malpractice claim, which is a professional negligence claim. Accordingly, we have considered this case in that vein. Without concluding that the insurance business is a profession,[4] we note that we have held that the elements of a professional negligence action are the existence of a duty or standard of care on the part of the professional to protect another from injury, the failure to discharge that duty, and a resulting injury proximately caused by the breach of duty. *Three Affiliated Tribes v. Wold Eng.,* 419 N.W.2d 920, 921–22 (N.D.1988). While we have never set out a standard of care or duty owed to an insured by an insurance agent, we note that other sources have recognized such standards:

"Ordinarily, of course, an insurance agent assumes only those duties normally found in an agency relationship, including the obligation to deal with his principal in good faith and to carry out instructions, *and he assumes no duty to advise the insured merely by such relationship.* However, where an agent also holds himself out as a consultant and counselor, he does have a duty to advise the insured as to his insurance needs, particularly where such needs have been

---

**4.** For a discussion of the distinction between "profession" and "non-profession" in a negligence action see *Jilek v. Berger Elec., Inc.,* 441 N.W.2d 660 (N.D.1989).

brought to the agent's attention. And in so doing, he may be held to a higher standard of care than that required of the ordinary agent since he is acting as a specialist. Accordingly, the agent may be liable to an insured for the damage suffered by his failing to inform him as to a potential source of loss and by his failing to recommend insurance therefor. [Footnotes omitted.]" [Emphasis added.] 16A J. Appleman, Insurance Law and Practice § 8836, at 64–66 (rev. ed. 1981). *See Jones v. Grewe,* 189 Cal.App.3d 950, 234 Cal.Rptr. 717 (Cal.App. 2 Dist.1987) (ordinarily, insurance agent assumes only those duties normally found in any agency relationship, including the obligation to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured); *Sandbulte v. Farm Bureau Mut. Ins. Co.,* 343 N.W.2d 457 (Iowa 1984) (insurance agent owes general duty to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured); *Gabrielson v. Warnemunde,* 443 N.W.2d 540 (Minn.1989) (legal duty imposed on insurance agent is to exercise the skill and care which a reasonably prudent person engaged in the insurance business would use under similar circumstances, ordinarily limited to the duties imposed in any agency relationship, to act in good faith and follow instructions).

Other jurisdictions also recognize that an expanded duty or standard of care may arise on the part of an insurance agent on the basis of a "special relationship" between the insurance agent and the insured. *See Jones, supra,* 234 Cal.Rptr. 717 (an agent may assume additional duties by an express agreement or a holding out); *Sandbulte, supra,* 343 N.W.2d 457 (an expanded agency agreement, arrangement, or relationship, sufficient to require a greater duty from the agent than the general duty, generally exists when the agent holds himself out as an insurance specialist, consultant, or counselor and is receiving compensation for consultation and advice apart from premiums paid by the insured); *Bruner v. League General Ins. Co.,* 164 Mich.App. 28, 416 N.W.2d 318 (1987) (duty to advise a client regarding the adequacy of a policy's coverage may arise when a "special relationship" exists between the insurance company or its agent and the policyholder); *Born v. Medico Life Ins. Co.,* 428 N.W.2d 585 (Minn.Ct.App.1988) (whether or not an agent has an affirmative duty to inform the insured of possible gaps in coverage depends on the relationship of the parties, specific requests of the insured, and the professional judgment of the agent).

In a negligence action, whether or not a duty exists is generally an initial question of law for the court. *Barsness, supra,* 383 N.W.2d at 843. However, if the existence of a duty depends upon factual determinations, the facts must be resolved by the trier of fact. *Butz v. Werner,* 438 N.W.2d 509, 511 (N.D.1989). Issues which are questions of fact for the jury may become issues of law for the court, however, where the facts are such that reasonable persons could not differ. *See Morrison v. Grand Forks Housing Auth., supra,* 436 N.W.2d 221; *Kirton v. Williams Elec. Co-op., Inc., supra,* 265 N.W.2d 702.

■ Because we believe it fair and appropriate, we adopt the Minnesota standard of care previously expressed in *Gabrielson, supra,* 443 N.W.2d at 543, which requires an insurance agent to exercise the skill and care which a reasonably prudent person engaged in the insurance business would use under similar circumstances. This duty is ordinarily limited to the duties imposed in any agency relationship to act in good faith and follow instructions.

### I.

■ Rawlings contends that Larson breached a duty to procure insurance requested by Sweeney. Sweeney went to Larson seeking umbrella coverage. Larson sold Sweeney coverage between $250,000 and $1,250,000. Sweeney testified that he and Larson discussed additional coverage to fill the gap between the coverage he had with Fruhwirth and what he had with Larson, but that he did not request Larson to fill it.

During testimony from a January 12, 1987, trial in a related case entitled *Walle Mutual Insurance Company v. Charles D. Sweeney, et al,* Grand Forks County District Court, case no. 86101,[5] Larson responded to a question as follows:[6]

"Q. And did you advise Mr. Sweeney that if a gap existed between his motor vehicle coverage and the umbrella that he had to increase his automobile?

"A. I did."

At the same trial, Sweeney responded to questioning as follows:

"Q. Now, do you recall whether Mr. Larson told you previously that there was a gap or whether there could be and you better go check?

"A. He said to find out for sure.

\* \* \* \* \* \*

"Q. At any rate, Mr. Larson did tell you, did he not, if you found your motor vehicle coverage to be less than 250 thousand dollars you would have to get it increased or there would be a gap?

"A. That's correct."

In a sworn statement taken on June 24, 1986, Sweeney responded to questions concerning the gap, as follows:

"Q. At the time you purchased the umbrella policy Mr. Larson advised you that a gap existed between the coverage afforded by the limits of your automobile insurance policy and the level of liability with the limits of the umbrella policy?

"A. The General Casualty policy, yes.

"Q. And at that time Mr. Larson advised you that your automobile liability insurance limits were inadequate?

"A. Yes."

In his March 6, 1989, deposition, Sweeney responded to the following question:

"Q. So he advised you that if you wanted to fill that gap, that you would have to—or should go to Bill or somebody else?

"A. Yes."

Thus, Larson alerted Sweeney, at the very least, to the possibility of a gap and told him that if he wanted to fill it he should go to Fruhwirth or somebody else. Sweeney then contacted Fruhwirth in an attempt to obtain coverage to fill the gap. Viewing the evidence in a light most favorable to Rawlings, Larson did not fail in his duty to follow the instructions and procure the insurance requested by Sweeney.

## II.

Rawlings contends that Larson breached a duty to protect Sweeney from gaps in coverage. An affirmative duty to take action not specifically requested by the insured may arise on behalf of an insurance agent if some sort of special circumstances are present. *Gabrielson, supra* at 543. In *Bruner, supra,* the issue was whether or not a special relationship existed between an insurance agent and an insured such that the agent had a duty to advise the insured about the adequacy of the insurance coverage. The trial court had granted summary judgment in favor of the insurance agent. In affirming the trial court, the Michigan Court of Appeals said:

"[I]t is apparent that something more than the standard policyholder-insurer relationship is required in order to create a question of fact as to the existence of a 'special relationship' obligating the insurer to advise the policyholder about his or her insurance coverage. There must be, in a long-standing relationship, some type of interaction on a question of coverage, with the insured relying on the expertise of the insurance agent to the insured's detriment. In the instant case, plaintiffs have not alleged any facts suggesting that their relationship with de-

*Id.* at 180.

---

**5.** This case was later appealed to this Court in *Walle Mut. Ins. Co. v. Sweeney,* 419 N.W.2d 176 (N.D.1988), in which our Court said:

"Larson advised Sweeney that his automobiles were partially uninsured and suggested Sweeney increase his coverage. Sweeney unsuccessfully attempted to have his automobile insurance limits raised."

**6.** As there is no transcript of the summary judgment proceedings, we rely wholly on the exhibits contained in the judgment roll for the evidence which the district court may have considered in determining this case.

fendant was anything other than a standard one.... There was no allegation that plaintiffs requested, expected, or relied upon defendant to provide protection against uninsured motorists....

"Thus, since plaintiffs have failed to set forth in their pleadings, affidavits, or other documentary evidence any facts that could possibly establish a special relationship between plaintiffs and defendant, we conclude that the trial court did not err in granting summary disposition...."

*Bruner, supra* at 321.

Similarly, in the case at hand, Rawlings has failed to set forth any facts that could possibly establish a special relationship which would extend the duty owed by Larson. Sweeney testified that his contact with Larson as an insurance agent was limited. Larson had not previously handled automobile insurance for Sweeney. Rawlings argues that no special relationship is required when an insurance agent knowingly creates a gap in coverage. We disagree. A special relationship is required to expand the general duties owed by an insurance agent. As previously noted, Larson did inform Sweeney of the possibility of a gap and advised Sweeney to get it covered by someone else. We conclude as a matter of law that Larson had no duty to protect Sweeney from the gap in his coverage under the circumstances of this case.

### III.

Rawlings contends that Larson negligently misrepresented to Sweeney that he (Larson) *could* not obtain the coverage to fill the gap. Larson contends that his statements to Sweeney were to the effect that he *would* not provide the coverage and that Sweeney should seek another insurance agent who would. In his March 6, 1989, deposition, Sweeney responded to questions as follows:

"Q. Did you ever request Dewey [Larson] to get coverage for you to fill that gap?

"A. Like I stated before, Dewey—we talked about it in general and he says—he had some insurance, but he said there was no way because he had one guy that had just gotten two speeding tickets and he got dropped. He said, 'There's no way that I'd even try and write it', he said.

"Q. So he advised you that if you wanted to fill that gap, that you would have to—or should go to Bill [Fruhwirth] or somebody else?

"A. Yes.

"Q. So you weren't expecting Dewey to get coverage to fill the gap for you on the automobile?

"A. No, I wasn't.

"Q. And you weren't and never did rely upon him to fill that gap for you?

"A. No."

In opposition to the summary judgment, Rawlings filed an affidavit of Robert C. Rust, an experienced North Dakota insurance agent. Rust indicated that both Larson and Fruhwirth could have procured the liability insurance to fill the gap. He also stated that Larson and Fruhwirth should have known that such insurance was available. He asserted that by failing to procure sufficient insurance to cover Sweeney's gap, Larson failed to exercise such reasonable skill and ordinary diligence as may fairly be expected from a reasonable and prudent insurance agent. This affidavit, Rawlings contends, raises sufficient factual questions to preclude summary judgment.

As stated previously, the elements of a professional negligence action are: 1) existence of duty or standard of care to protect another from injury; 2) failure to discharge that duty; and 3) resulting injury proximately caused by the breach of the duty. Because we find that there was no duty beyond that of a general agency relationship, *i.e.*, to exercise the skill and care which a reasonably prudent person engaged in the insurance business would use under similar circumstances in following the specific requests of the insured, we do not reach the second element. Larson had no duty to procure the additional insurance without a specific request from the insured to do so. Larson advised Sweeney, at the very least, of the possibility of the gap and

that he should get insurance to cover it. We find no greater duty was required of Larson under these circumstances.

While we recognize that the issue of proximate cause in a negligence case is generally one for the jury to decide, *First Trust Co. v. Scheels Hardware*, 429 N.W.2d 5, 14 (N.D.1988), we note for sake of discussion that even if we were to conclude that a special relationship existed and that the duty was therefore broadened, Larson's actions were not the proximate cause of Sweeney's injuries. If Sweeney did rely on Larson's advice, that advice was reasonable under the circumstances. Larson advised Sweeney, at the very least, of the possibility of the gap, that he should get it covered if it existed, and that he should see his usual automobile insurance agent, Fruhwirth, or someone else about procuring such coverage. Sweeney then contacted Fruhwirth in an attempt to secure such coverage, but such coverage was never provided. Sweeney admits that he did not request, rely on, or expect Larson to fill the gap. We recognize that if different factual inferences may be drawn from undisputed facts, they must be drawn in favor of the party opposing summary judgment. *Larson v. Baer*, 418 N.W.2d 282, 286 (N.D.1988). However, even if it could be inferred from Larson's statements that he *could* not, as distinguished from *would* not, provide the insurance, when in reality he could have obtained such insurance through a broker in Minneapolis, Minnesota, or Lloyd's of London had he been completely knowledgeable as to what was available, we still do not believe he had a duty to do so under the circumstances of this case where Sweeney did not rely on him to do so. We thus find no basis for a claim of negligent misrepresentation.

In summary, we conclude that reasonable persons could not differ in finding that Larson did not breach his general agency duties. Those duties did not require Larson to protect Sweeney from gaps in his coverage without a specific request to do so. Because Larson did not have a duty to procure the insurance to fill the gap and because Sweeney did not rely on Larson to procure such coverage, we find no basis for a claim of negligent misrepresentation.

Accordingly, the judgment of the district court is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE, MESCHKE and GIERKE, JJ., concur.