**Paula J. LARSEN, Plaintiff and Appellant,**

v.

**Robert W. ZARRETT, M.D., Fargo Clinic MeritCare, and St. Luke's Hospitals–MeritCare, Defendants and Appellees.**

Civ. No. 920242.

Supreme Court of North Dakota.

March 29, 1993.

Gary Hazelton, Duranske & Hazelton, Bemidji, MN, for plaintiff and appellant. Submitted on brief.

Jane C. Voglewede (argued), and Wayne W. Carlson (on brief), of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for defendants and appellees Robert W. Zarrett, M.D., and Fargo Clinic MeritCare.

Paul F. Richard (argued), and Jack G. Marcil (on brief), of Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for defendant and appellee St. Luke's Hospitals–MeritCare.

VANDE WALLE, Chief Justice.

Paula J. Larsen appealed from a district court judgment dismissing with prejudice her medical malpractice action against Robert W. Zarrett, M.D., Fargo Clinic Merit-Care, and St. Luke's Hospitals–MeritCare. We affirm.

On August 17, 1989, Dr. Zarrett performed surgery on Larsen for hemorrhoids and an inguinal hernia. After the surgery, Larsen complained of severe pain and

numbness in her right leg. She was referred to a neurologist for further evaluation. A CT scan and an EMG study produced normal results.

In July 1991, Larsen commenced this action against Dr. Zarrett, Fargo Clinic, and St. Luke's Hospitals, seeking recovery for nerve damage suffered while she was under general anesthesia during the surgery. In January 1992, the defendants moved for summary judgment of dismissal, asserting that Larsen had not obtained an admissible expert opinion to support her action, and that she therefore had failed to comply with the requirements of § 28–01–46, N.D.C.C. In February 1992, the trial court granted Larsen an additional 30 days to obtain a supporting expert opinion. In May 1992, the defendants renewed their motion for summary judgment of dismissal, asserting that Larsen still had not obtained an admissible supporting expert opinion. In June 1992, the trial court dismissed Larsen's action with prejudice. Larsen appealed.

Section 28–01–46, N.D.C.C., provides:

"*28–01–46. Expert opinion required to maintain an action based upon alleged medical negligence except in obvious cases.* Any action for injury or death against a physician, nurse, or hospital licensed by this state based upon professional negligence is dismissible on motion unless the claimant has obtained an admissible expert opinion to support the allegation of professional negligence within three months of the commencement of the action or at such later date as set by the court. This section does not apply to alleged lack of informed consent, unintentional failure to remove a foreign substance from within the body of a patient, or performance of a medical procedure upon the wrong patient, organ, limb, or other part of the patient's body, or other obvious occurrence."

■ Section 28–01–46 was designed to minimize frivolous claims against physicians, nurses, and hospitals [*Heimer v. Privratsky*, 434 N.W.2d 357 (N.D.1989)], by avoiding the necessity of a trial in an action based upon professional negligence unless the plaintiff obtains an expert opinion to substantiate the allegations of negligence. *Fortier v. Traynor*, 330 N.W.2d 513 (N.D.1983). The statute thus seeks to prevent protracted litigation when a medical malpractice plaintiff cannot substantiate a basis for a claim.

■ Except for the three month limit for obtaining an admissible supporting expert opinion, § 28–01–46 has been viewed as essentially codifying the pre-existing case law in this jurisdiction requiring expert testimony to support a prima facie claim of medical malpractice. *Fortier v. Traynor*, supra; *Morlan v. Harrington*, 658 F.Supp. 24 (D.N.D.1986). A prima facie case of medical malpractice consists of expert evidence establishing the applicable standard of care, violation of that standard, and a causal relationship between the violation and the harm complained of. *Heimer v. Privratsky*, supra; *Peterson v. Kilzer*, 420 N.W.2d 754 (N.D.1988); *VanVleet v. Pfeifle*, 289 N.W.2d 781 (N.D.1980); *Winkjer v. Herr*, 277 N.W.2d 579 (N.D.1979). However, expert testimony is not necessary "to establish a duty, the breach of which is a blunder so egregious that a layman is capable of comprehending its enormity." *Arneson v. Olson*, 270 N.W.2d 125 (N.D.1978). *See also Heimer v. Privratsky*, supra; *Wasem v. Laskowski*, 274 N.W.2d 219 (N.D.1979); *Winkjer v. Herr*, supra.

■ In this case, Larsen relied upon two experts to support her claim. Dr. John W. Tulloch, a neurologist, conducted an independent examination of Larsen, and reported that Larsen's recollection and supporting medical records "indicate that [her lumbar plexopathy] originated in relation to her operations August 17, 1989." Larsen's counsel then requested Dr. Tulloch to provide an expert opinion pursuant to the requirements of North Dakota law. Dr. Tulloch noted that Larsen's lumbar plexopathy was "an unusual outcome in relation to the type of surgeries" Larsen underwent, but said:

"I am unable to say whether or not this is a deviation from the standard of care in such surgical cases. As a neurologist, I am simply not familiar enough with

surgical standards of care to be able to attest that such standards were breached in this particular case. For this reason, I am sure that I would not be deemed a credible expert with respect to surgical standards of care. I believe that you would actually need a general surgeon's opinion on this matter."

Larsen contacted a second expert, Dr. Richard G. Strate, a surgeon who examined Larsen's medical records and suggested "further evaluation of this patient in hopes of determining precisely what is going on and possibly the causative factor."

Larsen was evaluated again by Dr. Tulloch who noted as a "potential etiology" that Larsen may have suffered "a stretch injury which is conceivable in a patient under general anesthesia who has to be managed in multiple positions on the operative table." Dr. Tulloch concluded that "I am quite certain that the only mechanism available for this proximal injury, provided that CT scan really did rule out hemorrhage, would be stretch."

After the defendants filed their initial motions for dismissal, Larsen's counsel wrote Dr. Strate and specifically asked him for his opinion whether there was a deviation from the surgical standard of care.[1] Dr. Strate concluded that Larsen "suffered either some stretching of the nerve or pressure upon the nerve near the spinal column sometime immediately prior to, during, or immediately after her anesthetic and surgical procedure," but added:

"I have ... re-examined the operative report and anesthetic record and find nothing that would indicate that there was any deviation from the usual practice in turning or positioning the patient for surgery. The operative procedures themselves were handled in a fairly straightforward manner and without complication.

"In summary, I feel that Ms. Larsen did indeed experience some event that led to a neurologic problem involving the lumbar plexus on the right side and this event most likely occurred sometime during the operative procedure. I cannot, however, identify any deviation from the standard practice as evidenced in her preoperative, operative, and postoperative records. This would appear to be a very unfortunate event which, however, could not have been predicted nor anticipated. I am also not sure what special precautions could possibly have been taken in view of the unknown etiology of this apparent nerve injury."

■ Larsen's counsel again wrote to Dr. Strate, explained to him the doctrine of res ipsa loquitur, and asked: "is the injury suffered by Ms. Larsen one that ordinarily would not occur unless there had been a deviation from the standard of care or is the result rather one that is a recognized risk associated with surgery of this type which can occur even if the standard of care is observed?" Dr. Strate replied:

"I would consider that Ms. Larsen's problem would not be considered as a

1. Larsen's counsel wrote to Dr. Strate:
"Unfortunately defense counsel feels that neither your report nor Dr. Tulloch's report constitute an expert medical opinion that the surgical standard of care was not observed and thus caused Ms. Larsen's condition. They have filed a motion to dismiss Ms. Larsen's claim on this basis which is scheduled to be heard on February 4th in Fargo. North Dakota law requires that a plaintiff alleging negligence on the part of a physician obtain 'an admissible expert opinion to support the allegation of professional negligence within three months of the commencement of the action or at such later date as set by the court.' Thus, although I feel we have such an opinion I ask that you please drop me a note containing an opinion specifically addressing whether the condition [sic] suffers from has result-

ed from the surgeon's failure to meet the applicable surgical standard of care. Please keep in mind that what we are dealing with here is an issue of legal rather than medical causation. What is required is not certainty but rather an opinion that based on a review of the records and all other information it is more probable than not that the condition Ms. Larsen suffers from has resulted from failure to observe the applicable standard of care. Phrased another way, that the circumstances supporting a theory of negligence are of greater weight than the evidence supporting a theory of no negligence. Thus, it is not necessary to exclude all other possible theories. It is only necessary that the theory of negligence be the more probable theory than that or those of no negligence."

recognized risk associated with the surgery performed. The problem arises in that we have not been able to identify the cause of her injury. We can recognize that there has been an injury to the spinal cord roots based upon the patient's symptoms and upon the neurologic examination performed. We cannot, however, state that a particular action or lack of action on the part of the surgeon or anesthesiologist, or a particular position that the patient was placed in was the specific entity that led to the outcome seen.

"What can be said is that the patient was apparently neurologically normal prior to surgery. That she underwent anesthesia and two surgical procedures with an intra-operative change in position. That when she awoke from anesthesia symptoms of a neurologic deficit was [sic] present. I cannot, however, state that there was something done (or not done) that led to this condition."

Larsen does not assert that the expert opinions of Dr. Strate and Dr. Tulloch alone support a prima facie case of medical malpractice. Neither doctor could say that a violation of the applicable standard of care occurred or that there was a causal relationship between any such violation and the harm complained of. Rather, relying on authority from other jurisdictions, Larsen argues that the circumstantial evidentiary doctrine of res ipsa loquitur, when aided by the expert opinions of Dr. Strate and Dr. Tulloch, creates an inference of negligence. Larsen's authority from other jurisdictions applies res ipsa loquitur more expansively in medical malpractice cases than we have in our prior cases. *See, e.g., Sagmiller v. Carlsen*, 219 N.W.2d 885, 893 (N.D.1974) [res ipsa loquitur applies "only where the facts showing negligence are within the understanding of laymen, and the probability of the adverse result from the facts shown (are) within the common knowledge of laymen"]. According to Larsen, if we adopt the approach taken in other jurisdictions, dismissal under § 28–01–46 is improper because her nerve injury to the lower back during surgical procedures performed on other areas of her body is an "obvious occurrence" of negligence within the common knowledge of a layperson when that knowledge is aided by the testimony of her consulting expert witnesses. We reject this argument.

Section 28–01–46 specifically defines the instances in which an expert opinion is unnecessary as "lack of informed consent, unintentional failure to remove a foreign substance from within the body of a patient, or performance of a medical procedure upon the wrong patient, organ, limb, or other part of the patient's body, or other obvious occurrence." Under the rule of *ejusdem generis*, when general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects specifically enumerated. *Resolution Trust v. Dickinson Econo-Storage*, 474 N.W.2d 50 (N.D.1991). The word "obvious" means "easily understood; requiring no thought or consideration to understand or analyze; so simple and clear as to be unmistakable." Webster's Third New International Dictionary, at p. 1559 (1971). By enacting § 28–01–46, the Legislature has essentially defined the doctrine of res ipsa loquitur for purposes of medical malpractice cases in this jurisdiction and has given it a scope which is, perhaps, even more narrow and limited than our case law on the doctrine which preceded the statute's enactment. *See, e.g., Winkjer v. Herr, supra*.

Larsen's argument proposes a separate, unexpressed exception to the statute by combining the concept of an "obvious occurrence" with expert medical testimony to avoid dismissal of her malpractice claim. An "obvious occurrence" which must be explained by expert medical testimony is not only a contradiction in terms, but contravenes clear and unequivocal statutory language that requires "an admissible expert opinion to support the allegation of professional negligence." Larsen's proposal is better made to the Legislature than to this court.

Larsen alternatively contends that because her injury is to a different area of the body than the surgical situs and is of a

type which is not an inherent risk of the operations she underwent, this case falls within the "other obvious occurrence" exception to § 28–01–46. We disagree.

The "obvious occurrence" exception applies only to cases that are plainly within the knowledge of a layperson. In an "obvious occurrence" case, expert testimony is unnecessary precisely because a layperson can find negligence without the benefit of an expert opinion. This case differs from the statutory examples of leaving a foreign substance within the body or operating on the wrong patient, limb, or organ. Rather, it involves technical surgical procedures and nerve damage, both of which have been recognized as generally being beyond the understanding of a layperson. *See Maguire v. Taylor*, 940 F.2d 375 (8th Cir. 1991); *Lemke v. United States*, 557 F.Supp. 1205 (D.N.D.1983). Neither of Larsen's experts could say that her injury was the type that would occur only if there was negligence. It would be illogical to conclude that this case involved an "obvious occurrence" when Larsen's own medical experts could not find any deviation from the standard of care. There was no "obvious occurrence" of negligence in this case.

Larsen also asserts that, where knowledge of the mechanism of injury is within the exclusive control of the defendants, full discovery should be completed before a trial court considers motions for dismissal under § 28–01–46. We disagree. In very few medical malpractice cases is the mechanism of injury within the exclusive control of anyone other than the defending doctor, hospital, or nurse. As we have noted, the statute was designed to prevent protracted litigation when a medical malpractice plaintiff has no basis for a claim. Suspending the statute until the close of discovery, as Larsen suggests, would thwart this purpose and afford no protection against the frivolous claims the Legislature sought to diminish.

Moreover, the trial court granted Larsen additional time to find an admissible supporting expert medical opinion. Larsen had approximately 10 months to comply with the statute. The record does not show that any interrogatories were served on the defendants or that any depositions were taken.

Because Larsen failed to meet the requirements of § 28–01–46, we conclude that the trial court did not err in dismissing her medical malpractice action.[2]

The judgment is affirmed.

---

**2.** We have not precisely defined the standard of review to be employed by this court in reviewing a trial court's dismissal of a medical malpractice action under § 28–01–46, N.D.C.C., or the standard to be used by the trial court in making its initial determination on the motion. However, we have previously applied the abuse of discretion standard in reviewing a trial court's dismissal under § 28–01–46 in an unpublished summary affirmance. *See Johnson v. Kennedy*, 453 N.W.2d 830 (N.D.1990) (text in Westlaw).

The defendants in this case moved for dismissal under the statute through means of a Rule 56, N.D.R.Civ.P., motion for summary judgment, a method approved by at least one federal district court judge in this state. *See Morlan v. Harrington*, 658 F.Supp. 24 (D.N.D. 1986). On appeal from a summary judgment, we determine whether the information available to the trial court, when viewed in the light most favorable to the opposing party, precludes the existence of a genuine issue of material fact and entitles the moving party to summary judgment as a matter of law. *See State Bank of Kenmare v. Lindberg*, 471 N.W.2d 470 (N.D.1991).

Because § 28–01–46 refers to an "admissible" expert opinion to support a medical malpractice claim, a trial court's role in reviewing an expert opinion under the statute may also be viewed as an evidentiary one. We have said that the decision to admit or not to admit expert testimony under Rule 702, N.D.R.Ev., rests within the sound discretion of the trial court, and its decision will not be reversed on appeal unless the court has abused its discretion. *See Nelson v. Trinity Medical Center*, 419 N.W.2d 886 (N.D. 1988). A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *Fleck v. Fleck*, 337 N.W.2d 786 (N.D.1983). A trial court's decision is not arbitrary, unreasonable or unconscionable if the exercise of discretion is " 'the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination.' " *Kinney v. First National Bank*, 495 N.W.2d 69, 71 (N.D.1993), quoting *Matter of Altshuler*, 171 Wis.2d 1, 490 N.W.2d 1, 3 (1992).

A trial court's decision to dismiss a medical malpractice claim under the authority of § 28–01–46 does not fit neatly within the contours of

MESCHKE, J., VERNON R. PEDERSON and RALPH J. ERICKSTAD, Surrogate Judges and OLSON, District Judge, concur.

Surrogate Judge RALPH J. ERICKSTAD was Chief Justice at the time this case was heard and served as surrogate judge for this case pursuant to Section 27–17–03, N.D.C.C.

PEDERSON, Surrogate Judge, and OLSON, District Judge, sitting in place of LEVINE, J., and JOHNSON, J., disqualified, who was a member of the Court when this case was heard.

Justice NEUMANN and Justice SANDSTROM, not being members of the Court when this case was heard, did not participate in this decision.

either a typical summary judgment disposition or a typical evidentiary ruling made during the course of a trial. The statute, by requiring an admissible expert opinion within three months of the commencement of the action, accelerates the litigation process in a medical malpractice case. The summary judgment procedure under Rule 56 envisions completion of more discovery by all of the parties than can usually be accomplished under the time limitations of the statute. Likewise, the consequence of a dismissal under the statute is much more drastic than the consequence of a typical evidentiary ruling made by the court during the course of a trial. For these reasons, simply applying either a genuine-issue-of-material-fact analysis or an evidentiary-abuse-of-discretion analysis may not be appropriate. Rather, greater leniency for the plaintiff who is subject to a motion for dismissal under § 28–01–46 may be required than is typically given under either standard.

In any event, we need not resolve the question in this case. Applying either summary judgment principles or evidentiary-abuse-of-discretion principles, and even applying those principles liberally in favor of this plaintiff, we conclude that the trial court did not err in dismissing Larsen's medical malpractice claim because she failed to meet the requirements of the statute as a matter of law.